## MARY ALLEN AND CATHARINE QUINN v. ROSA ALLEN.

*Fraudulent marriage—Rights of the wife—Laches.*

The defendant many years since intermarried with one John Allen supposing him to be a bachelor. A year later he told her he was a widower when married, and had two children in Ireland. At defendant's suggestion he sent for the children, and they were received and brought up by defendant with her own. Afterwards lands were purchased and conveyed to Allen and the defendant as husband and wife, which under the statutes of the State, if they were husband and wife in fact, made them joint tenants. Allen, having become embarrassed, his interest in these lands was seized and sold on execution and bid in by a friend at his request but without any promise that Allen might redeem. Allen died, and defendant took out letters of administration and settled his estate. She also procured the pur-

chaser at the execution sale to convey to her, on being repaid, the purchase price with interest. The lands were then of little value, but afterwards increased in value largely. Until Allen's death, defendant always supposed she was his lawful wife.

Eleven years after defendant procured the last-mentioned conveyance, the two children of Allen, who were brought on from Ireland, filed their bill in equity, setting forth that their mother was living and not divorced from Allen at the time of the marriage with defendant; that defendant was consequently never the lawful wife of Allen; that the procuring by defendant of a conveyance to herself of the land sold on execution was a fraud upon complainants who were the lawful heirs of Allen; that defendant holds the land in constructive trusts for them; and praying that she be decreed to account for rents and profits, and to convey. No excuse for the long delay was offered.

*Held,* that the case was without equity; the deed taken by defendant only placing the title where but for the fraud upon her in the marriage it would have rested.

*Held, further,* that the long and unexplained delay in moving to take advantage of the alleged fraud was of itself conclusive against the relief sought.

Appeal from Kent. Submitted Oct. 7. Decided Oct. 19.

BILL to compel conveyance. Defendant appeals. Reversed; bill dismissed.

*H. E. Thompson* for complainants.

*D. E. Corbitt* for defendant.

COOLEY, J. The facts as we find them to be in this case are as follows: In the year 1839 John Allen and Bridget Kearns were united in marriage at Roxboro, in Ireland. They lived together a few years, during which time three children were born to them, one of whom died in infancy, and the other two are the complainants in this suit. Some time in 1845 John Allen left Ireland and came to the United States, leaving his wife and children behind him, and never returned. It is not very clear upon the evidence whether the mother and children were living together when Allen left them, but if they were, they were separated soon after and the children were taken into the family of Allen's mother. On arriving in this country John Allen settled in

Bristol, Rhode Island, where in the fall of 1847 he was married to the defendant in this suit who then supposed he was a bachelor. After living with her a year or so, and after one child had been born to them, he told this defendant that he was a widower, and had two children in Ireland, and at her suggestion he sent for them, and they were brought over and taken into the family. There is nothing in the record which leads us to suppose that the mother ever gave the slightest attention to these children after she parted with them in Ireland, nor is any explanation of the separation between herself and her husband offered by any one. The evidence tends to show that she lived for several years after the separation, but was dead before this suit was instituted.

John Allen and the defendant lived together as husband and wife until his death in 1863. Meantime six children had been born to them, five of whom survived him and are now supposed to be living. Several witnesses testified in this case that knowledge of John Allen's marriage to Bridget Kearns was communicated to defendant in his life-time, but the statements of every one are so self-contradictory as to produce no conviction, and we are satisfied of the truth of defendant's evidence that she never heard of it till some time after his death. Meantime she brought up complainants with her own children, treating all alike, and no complaint whatever is made which impeaches her motherly care or kindness. The complainant Mary was married and left home in 1858, and the complainant Catharine a year later.

John Allen and the defendant removed to this State in 1850 or 1851 and settled in Grand Rapids. There he bought a lot and began business in a small way as a grocer, but the title to the lot subsequently proved defective. In 1855 a purchase was made of lots 118 and 119 on the Kent plat, Grand Rapids, and the conveyance was made to "John Allen and Mary Allen his wife." This, under our statute, Comp. L. §§ 4111, 4112, had they in fact been husband and wife, would have created in them an estate in joint tenancy. A wooden building was erected on lot 119 into which John Allen moved with his family, and his small stock of gro-

ceries. This building was burned in 1859 and a brick block erected in its place, in which his business was subsequently carried on. Defendant aided him in procuring the means of living by keeping boarders.

In June, 1862, John Allen's interest in lots 118 and 119 was sold on execution, and at his request was bid in by his friend and legal adviser Hon. S. L. Withey. The amount for which they were sold was only about a hundred dollars, and Allen no doubt supposed Judge Withey would allow him to redeem at any time by repaying what was paid on the sale and interest. He however asked for no contract or promise to that effect, either written or oral, and when Judge Withey afterwards received, as he did, a sheriff's deed of the lots, he became absolute owner of all the previous interest of John Allen therein, with a severance, however, of the joint tenancy.

The lots thus sold were encumbered, and when John Allen died in November, 1863, the value, over and above the encumbrances, was not very great. Defendant after his death at first attempted to settle up the estate without administration, and proceeded to sell the goods, which only brought $200, and to pay debts. In August, 1864, however, she took out letters of administration, and the estate went through the forms of settlement in the probate court. We do not follow these proceedings, as they are not subject to be disturbed now and are unimportant to this suit.

In March, 1865, defendant requested Judge Withey to release to her lots 118 and 119, and he did so on being repaid his advance and interest. At this time he supposed her to be John Allen's widow. The value of real estate in Grand Rapids largely increased about and after this time, and defendant was enabled to sell one-half of lot 119 for sufficient to satisfy the encumbrances on both. She also sold lot 118.

In April, 1876, the complainants filed their bill in which they set forth the fact that their mother was living at the time of the marriage of their father to defendant, and that the second marriage was consequently void; that the pur-

chase of lots 118 and 119 in the name of John Allen and
Rosa Allen made the former tenant in common of an undivided half thereof; that the purchase by Judge Withey was
on an understanding and agreement with John Allen that
they should be reconveyed when the purchase price and
interest was repaid; that defendant repaid that price with
moneys belonging to John Allen's estate, and took a deed of
the lots in fraud of the rights of complainants who are John
Allen's sole heirs at law; and praying that defendant may
be decreed to account for the rents and profits, the sums
received on sales, etc., and to convey to complainants the
undivided half of lot 119, the legal title to which still
remains in her. The case was heard on pleadings and
proofs, and decree entered in accordance with the prayer of
the bill.

Do the facts above recited disclose any equity in these
complainants? In considering this question we must, as we
have already said, put aside the matters involved in the
regular settlement of John Allen's estate in the probate
court, for complainants had their day in court there, and the
orders of the court were acquiesced in without complaint.
This controversy concerns lots 118 and 119 and the release
by Judge Withey to defendant, and is limited to the charge
of fraud connected therewith. And it is to be observed
with respect to that conveyance that it only placed the title
where it would have gone, had John Allen remained owner
to the time of his death, and had defendant not been
deceived into a void marriage. Whatever may have been
the case at law, in the forum of morals she was owner with
him of an estate which on his death would survive to her;
and when he had lost his interest and she redeemed it, she
was guilty of no moral wrong in taking a release in her own
name. John Allen's misfortune in having his land sold on
execution might have operated to her disadvantage but for
her being enabled to buy in the title as she did afterwards.

But it is well in examining the equity of complainants to
see exactly what it is they propose to do. And first, it is
to take advantage of the great wrong done by their father
to the defendant, and on a technical rule of law deprive her

of property which, on the facts as she understood them, she had lawfully acquired. But second, they propose also to appropriate to their exclusive use the estate of their father, though the claim of five other children, bastardized through a fraud upon the mother, appeals to the sympathy quite as much as does theirs, and but for the technical rule of law already alluded to, is quite as deserving of attention.

A technical rule of law which in the particular case operates unjustly is a bad foundation for an equitable complaint. But we are relieved from a discussion of it in this case by a fact which stands out prominently, and is a complete and absolute bar to the remedy sought.

This bill was filed more than eleven years after the conveyance of which complainants seek to obtain the benefit. There has been no secrecy in defendant's dealings, and no apparent attempt to deceive. The interest conveyed was of small value at the time : it has become of considerable value since; partly through the rapid growth of the city, and partly through the good management of defendant. Complainants made no claim to it until the advance was realized, and if they ever intended to do so, occupied the position of parties waiting to charge a fraud when they could do so with certain profit. But in contemplation of equity they waited altogether too long. Their laches was gross, and it stands wholly unexcused. We have so fully considered the matter of laches in previous cases, that we content ourselves with a mere reference to them. *Campau v. Van Dyke* 15 Mich. 371; *Russell v. Miller* 26 Mich. 1; *Mc Vickar v. Filer* 31 Mich. 304. In the last case it was said that "if any case can call upon a party to move promptly in the assertion of his rights, it is one in which a city is growing up on the land he claims, built by those who in good faith are relying upon an adverse title acquired with his apparent consent and acquiescence." Page 308. The remark has forcible application to this case.

The decree appealed from must be reversed, and the bill dismissed with costs of both courts.

The other Justices concurred.