DICKEY *v.* CONVERSE.

| 117 | 449 |
| a121 | 594 |
| 117 | 449 |
| s76NW | 80 |
| s72ASR | 568 |
| e130 | 50 |
| 117 | 449 |
| 138 | ¹113 |
| d138 | ¹114 |
| e138 | ¹115 |
| 117 | 449 |
| '152 | 263 |

1. TENANCY BY ENTIRETIES—OWNERSHIP OF CROPS—SALE ON EXE-
CUTION.

   In the absence of any agreement between tenants by entirety as
   to the ownership of crops raised upon the land, they will be
   held subject to the same law as the land itself, and therefore
   exempt from levy and sale on an execution against one of the
   tenants.[1]

2. SAME—TROVER—DEFENSES—FRAUDULENT CONVEYANCES—HOME-
STEAD.

   It is no defense to an action of trover against an officer for sell-
   ing, under an execution against a husband, crops raised by
   him upon land occupied by himself and wife as tenants by
   the entirety, that the joint deed was taken after the judg-
   ment was rendered, with the intent to hinder and delay
   the execution creditor, where no steps have been taken in
   equity to set the deed aside, and it is not clear that the credit-
   or's right to complain is not cut off in any event by reason of
   a homestead exemption.

Error to Hillsdale; Lane, J.   Submitted January 7,
1898.   Decided July 12, 1898.

Trover by Edgar P. Dickey and Mary A. Dickey
against Russell E. Converse.   From a judgment for plain-
tiffs, defendant brings error.   Affirmed.

*Corvis M. Barre* and *E. J. March* (*F. A. Lyon*, of
counsel), for appellant.

*Bailey & Janes*, for appellees.

MOORE, J.   In October, 1885, the plaintiff Edgar P.
Dickey gave his note for Bohemian oats for $160.   In

---

[1] The multitude of authorities on the different phases of tenancy
by entireties are collected in a note to *Hiles* v. *Fisher*, ( N. Y.) 30 L.
R. A. 305.

September, 1889, Mrs. Salmon recovered in the circuit court a judgment upon this note. Afterwards an execution was issued, and placed in the hands of the sheriff, who is defendant in this case. In September, 1894, he levied upon crops grown upon an 80-acre farm, occupied by the plaintiffs in this case. He afterwards sold the crops, and the plaintiffs sued him in trover for the conversion. The case was tried by the circuit judge, who gave judgment in favor of plaintiffs. He also made findings of fact and conclusions of law. Defendant brings the case here by writ of error.

The record discloses that prior to November, 1881, John H. Dickey bought the farm for the purpose of selling it to his son Edgar and his nephew John Bennett, and made a contract with them by which they agreed to assume a mortgage of $1,200 which was on the farm, and to pay him $1,000. Under this agreement, Dickey and Bennett were in possession of the premises about two years, when some trouble arose, and the contract and premises were surrendered to the elder Dickey. Edgar afterwards worked the farm for his father, who in the meantime had increased the mortgage upon the farm until it amounted to $1,700. It was the verbal agreement between Edgar and his father that, if Edgar would reimburse his father for what the farm cost him, the father would deed it to Edgar. In July, 1886, the plaintiffs were married, and moved into the house upon the farm. Under the verbal arrangement, Edgar turned over to his father more or less of the proceeds of the farm, until they considered he had paid $400 in that way, prior to February, 1892. Edgar also built a barn and an addition to the house upon the farm. In February, 1892, it was arranged that, upon the payment of $100 to John H. Dickey, and the assumption of the $1,700 mortgage by the plaintiffs, John H. Dickey would deed to them the farm. For the purpose of raising the $100, the father of Mrs. Mary A. Dickey signed a note with her husband. The money was obtained at a bank, and paid to the elder Dickey. When this note was

given, it was agreed the deed should be given to Edgar P. Dickey and his wife. This note was afterwards paid with the proceeds of the farm. The deed was made and delivered to them in 1892, but was not put upon record. The crops levied upon were grown in 1894.

Of course, the findings of fact made by the circuit judge are conclusive. His findings, so far as it is necessary to refer to them, are as follows:

"The consideration of the deed from John H. Dickey and wife to Edgar P. and Mary A. Dickey, so far as it was paid at all, was paid by Edgar P. Dickey out of his own funds, except that $100 of said amount was paid with proceeds from the farm after it was so purchased, and except that there was a mortgage upon said premises for $1,700, upon which both Edgar P. Dickey and Mary A. Dickey are liable. The title was taken by Edgar P. and Mary A. Dickey through a quitclaim deed from the father, and at that time there were $1,700 of mortgages upon the premises, previously given by the father. The title of both Mary and Edgar was therefore subject to these mortgages, amounting to $1,700. As a matter of law, the court doth find that she was under the same obligation to discharge this mortgage incumbrance as was her husband; no more and no less. Neither of them was responsible for the payment of this mortgage by reason of any covenants in the conveyance by which they took the land. The amount of the consideration paid by the said Edgar P. out of his own funds was $400. Said Mary A. Dickey never actually paid anything of the consideration for this conveyance of February 3, 1892, except what was contributed of the products of the farm after it was so purchased by them. One hundred dollars of the consideration was paid from the products of the farm grown after title was in Mary A. and Edgar P. Dickey. This deed to Edgar P. and Mary A. Dickey the court finds to have been taken in the names of both, in the belief that it could not be reached by said execution creditor to satisfy her execution, and to hinder and delay said execution creditor in the collection of her judgment.

"The wheat, oats, and hay levied upon and in controversy in this case were cut upon said farm, which was managed by the said Edgar P. and Mary A. Dickey in the way in which farms are ordinarily run and managed

by husband and wife where the title is in the husband; that is to say, the said Edgar P. looked after the cultivation and management of the farm so far as the outdoor work was concerned, and marketed the products, the said Mary A. doing the work in the house, and, to some extent, out of doors, such as farmers' wives in the country are sometimes accustomed to do. The said Edgar P. does not personally perform all the labor. The property in question in this suit were the products of said farm, planted, grown, and harvested since the deed of February 3, 1892. There was no arrangement or agreement between the husband and wife as to the ownership of the products of the farm."

The court found, as a matter of law:

"That as this property was planted, grown, and gathered since the giving of the deed of February 3, 1892, there having been no agreement or arrangement between the said Edgar P. and Mary A. that either should have any other interest than such as would result from their joint ownership in the land, the title to such harvested products was, like the title to the land, in the said Edgar P. and Mary A., as tenants by the entirety, and, as such, not subject to execution for the individual debt of either."

The defendant considers the questions involved under two propositions, which he states as follows:

"*First.* Are the crops raised by the husband upon a farm owned by himself and wife, as tenants by entirety, or any part thereof, subject to the payment of the debts of the husband?

"*Second.* Did the purchase of this farm by said Edgar P. Dickey, and the taking of the title thereto in the names of himself and wife for the purpose of defeating and delaying the collection of this Salmon judgment, deprive the said Hannah E. Salmon of the right to levy her execution upon the crops raised thereon? In other words, can the fraud of said Edgar P. Dickey, in taking this deed in the name of himself and wife, be shown, in an action at law, for the purpose of subjecting the crops raised upon said farm to the satisfaction of this judgment taken against said Edgar P. Dickey individually?"

He answers the first proposition in the affirmative, and, as to the second proposition, says the fraud can be shown for the purpose of subjecting the property to this levy.

It is claimed the holding of plaintiffs is that of tenants by entirety, and that the husband is entitled to the full control of the rents and profits of the land during the joint lives, to the exclusion of the wife, and that the crops grown would be subject to the claims of creditors. A good many cases are cited in support of this proposition, but these cases are not in accord with the holdings of this court, as will hereafter be shown.

It is also argued that even though it is said that the married woman's act gives her full control of her property, including her interest in estates by entirety, it does not give her any right to control the husband's interest therein, and the crops raised upon such lands are owned by husband and wife as tenants in common, and one-half of them are liable to the payment of his debts; citing *Buttlar* v. *Rosenblath*, 42 N. J. Eq. 655 (59 Am. Rep. 52), and *Hiles* v. *Fisher*, 144 N. Y. 306 (30 L. R. A. 305, 43 Am. St. Rep. 762). The first of the cases does not relate to the question of who is entitled to crops grown upon land held by tenants in entirety, but it does hold that "the wife is endowed with the capacity during the joint lives to hold in her possession, as a single female, one-half the estate in common with her husband, and that the right of survivorship still exists as at common law," and that the interest of the husband in the real estate might be reached by creditors. In the case of *Hiles* v. *Fisher* it was held, where a husband executed a mortgage upon lands deeded to himself and wife, that the mortgage was effectual to convey his interest, which was a right to the use of an undivided one-half of the estate during the joint lives, and to the fee in case he survived his wife, and that, by the foreclosure and sale, the purchaser acquired this interest, and became a tenant in common with the wife of the premises, subject to her right of survivorship. As we understand the decisions, these cases are in direct conflict with our own court, and not in harmony with the law in relation to tenancy by entirety.

In *Fisher* v. *Provin*, 25 Mich. 347, where land was

conveyed in fee to husband and wife, it was held they did not take as tenants in common. In *Ætna Ins. Co.* v. *Resh*, 40 Mich. 241, it was held that, where husband and wife were in possession of a house granted to them by the same deed, the husband "was neither a tenant in common nor an ordinary joint tenant. His estate in case of his death went by survivorship to his wife, and during their lives, whatever his right may have been, it was not an undivided half of the property." In *Manwaring* v. *Powell*, 40 Mich. 375, it is said that husband and wife, under a grant made to them jointly, take by entireties, and therefore whatever would defeat his title would defeat hers also. In *Jacobs* v. *Miller*, 50 Mich. 119, it was said:

"The grant ran to the parties of the second part as husband and wife, and it was intended to make an estate by which the property should be held by entirety. The ingredients and incidents of such a title or estate give it an exclusive character, and distinguish it from all other modes of holding. The persons of the second part do not take by moieties, but are seised of the entirety, and the survivor takes the whole, and during the joint lives neither can alien so as to bind the other."

In *Vinton* v. *Beamer*, 55 Mich. 559, where a judgment creditor had levied upon and sold the interest of the husband, which was a life estate in 160 acres of land for himself and wife and the survivor of either of them, a deed was issued, and, after the redemption period expired, ejectment was brought. The court held it could not be maintained. The court said:

"The interest William Beamer took with his wife was a peculiar one. It was an entirety. *Fisher* v. *Provin*, 25 Mich. 347. They both took the same estate, the same interest, and it could not be separated. The right of the one was the right of the other. Neither could, by a separate transfer, affect the rights of the other or his own. What would defeat the interest of one would also defeat that of the other. *Manwaring* v. *Powell*, 40 Mich. 375. * * * William Beamer had no such distinctive estate in the premises as was here attempted to be sold upon

the execution, and which the plaintiff seeks to recover in his ejectment, and the court in this ejectment suit cannot invest him with it."

In *Speier* v. *Opfer*, 73 Mich. 35 (16 Am. St. Rep. 556), it was held a married woman could not be liable upon a joint contract with her husband for the erection of a building upon real property held by them as tenants by entirety. Of the character of the property the court said:

"During the lives of both, neither has an absolute inheritable interest. Neither can be said to hold an undivided half. They take by entireties, and, at the death of the wife, the whole passes at once to the husband. * * * This is not such. separate property of the wife as the statute gives her power to make contracts in relation to. She can neither sell, incumber, nor control it while living, nor devise it at her death."

In *Lewis' Appeal*, 85 Mich. 340 (24 Am. St. Rep. 94), it was held that husband and wife take as tenants by entirety, and not as joint tenants, under a joint deed to both, and the estate thus created, with the attendant right of survivorship, is not affected by a decree of divorce. The court quoted at length and with approval the language used in *Speier* v. *Opfer, supra.*

In *Naylor* v. *Minock*, 96 Mich. 182 (35 Am. St. Rep. 595), it was held that neither a husband nor wife can convey the estate vested in them as tenants in the entirety by his or her sole deed, and any instrument by which either attempts to make such conveyance is void.

It will be seen that *Buttlar* v. *Rosenblath, supra*, and *Hiles* v. *Fisher, supra*, are in direct conflict with these cases. See, also, *McCurdy* v. *Canning*, 64 Pa. St. 39.

This species of tenancy grows out of the unity of husband and wife, and is unlike that of joint tenants, who are each seised of an undivided moiety. The husband and wife are each seised of the whole, and not of undivided moieties. *Hardenbergh* v. *Hardenbergh*, 18 Am. Dec. 378 (10 N. J. Law, 42), note.

What is the purpose of the use of a farm? Is it not a

place to live upon ? to grow crops for consumption and sale?  If neither the husband nor the wife has an undivided moiety of the use of the farm, how can it be said each of them has an undivided interest or moiety in the result of that use?  To hold that the husband is not entitled to an undivided moiety of the use of the farm, but is entitled to an undivided half of the results of that use, is, we think, illogical.  While the precise question involved here has not been decided by this court, it has been before the supreme court of Indiana in *Patton* v. *Rankin*, 68 Ind. 245 (34 Am. Rep. 254), where it was held that " a crop raised on land held by a husband and wife by entireties is held by them in the same manner and subject to the same law as the land itself, and such crop is therefore not subject to levy and sale on an execution against the husband."

Passing to the second branch of the case, it is said that as the trial court has found the land was purchased by Mr. Dickey with his own funds, and the title was taken in the joint names of himself and wife, in the belief it could not be reached by Mrs. Salmon, the execution creditor, and to hinder and delay her in the collection of her judgment, this was a fraud upon her, and the defendant is entitled to recover.  Does this follow?  Mr. Dickey was a householder.  He was entitled to a homestead, not exceeding 40 acres in extent and $1,500 in value.  He was occupying 80 acres of land to which he had no legal title, upon which he had paid $400, and made improvements the extent and value of which are not clearly shown. It is doubtful if at this time he had any interest in this land which would have been subject to levy and sale. Was it a fraud upon his creditors, under such circumstances, for himself and wife to assume an indebtedness of $1,700, and to turn over a sum of money previously paid by the husband, and improvements made by him, which with the sum of money do not exceed in value the $1,500 allowed for homestead purposes, upon an agreement that the land should be conveyed to both of them?  It has been

held time and again that a conveyance by a debtor of land exempt as a homestead is not a fraud upon creditors. *Smith* v. *Rumsey*, 33 Mich. 183.   See 2 How. Stat. § 7722 (note).   It is not at all certain that a court in chancery would set aside this conveyance upon the application of a creditor as a fraud upon him; but, as that question is not directly before us, we express no opinion upon it.

There was no evidence on what part of the 80 acres the crops were grown.   They were grown two years after the deed was made to Mr. and Mrs. Dickey, and the court found there was no agreement between the husband and wife as to the ownership of the products of the farm.   In *Hill* v. *Chambers*, 30 Mich. 422, it was held that the presumption in relation to the ownership of crops, in the absence of any proof, is that ownership of products follows the title.   Of course, this presumption may be overcome by proof.   In Bump, Fraud. Conv. (4th Ed.) § 475, it is said:

"The grantee has a valid title until the creditors, by asserting their rights in due course of law, defeat it; and, when defeated, it is not rendered void *ab initio*, but only from the time of the levy of the execution under which the property is sold.   *   *   *   For the same reason, when land is fraudulently conveyed, the creditors cannot levy upon the crops subsequently produced by him, or upon property which he has converted from realty into personalty."

The defendant says there are qualifications to this rule, and that this case comes within the qualification that, if the creditors can show the transfer was colorable, the creditors may levy upon the crops, and that it is not necessary to have the deed set aside before the levy can be made; citing *Pierce* v. *Hill*, 35 Mich. 194 (24 Am. Rep. 541), and *Fury* v. *Strohecker*, 44 Mich. 337.   In the first of these cases the levy was made upon a crop growing at the time of the transfer.   In the second case it was held that where land is fraudulently conveyed, and the fraudulent grantor retains an interest in crops subse-

quently grown by an understanding with the grantee, the crops may be reached by a judgment creditor.

No steps have been taken to set aside the deed. The deed itself was not made by Mr. Dickey to his wife, and he never had any legal title to the land separate and apart from the title of his wife. It is not shown any agreement was made as to who should own the crops. Take the case as made, we cannot say the court erred in his disposition of the case.

Judgment is affirmed.

The other Justices concurred.