LANG v. PRINDLE.

1. PARTIES—HUSBAND AND WIFE—ESTATES BY ENTIRETIES—FRAUD AND DECEIT.

> The wife who executed jointly with her husband a land contract for the purchase of a fruit farm and who caused to be conveyed in part payment for the premises a parcel which appeared of record to belong to a third party, an attorney of the husband, but to which land the wife had previously had title and in which the plaintiff claimed an equity, is a necessary party to an action for fraud of the vendor in making the sale, where only a small part of the agreed price had been paid, and plaintiff did not attempt to rescind his bargain.

2. HUSBAND AND WIFE—TENANCY BY ENTIRETIES.

> In real property held by husband and wife by the entireties, neither has an undivided interest, but the estate is an entirety which is not defeated or affected by the act or conveyance of either.

Error to Van Buren; Des Voignes, J. Submitted October 5, 1910. (Docket No. 4.) Decided November 11, 1910.

Case by George S. Lang against Eugene F. Prindle for fraud. Judgment for plaintiff; defendant brings error. Reversed.

*Anderson & Warner* and *William J. Barnard*, for appellant.

*Thomas J. Cavanaugh* and *L. A. Tabor*, for appellee.

MOORE, J. This suit was commenced by summons in July, 1908. The plaintiff recovered a judgment for $6,500, which it is sought to review by writ of error.

Negotiations were had between the parties to this litigation running through several months for the exchange and purchase of real estate. A land contract was finally made in which the following appears:

"Article of agreement, made and concluded this 25th day of September in the year 1905, between Eugene F. Prindle and Emma A. Prindle, his wife, parties of the first part, and George S. Lang and Amelia Lang, as husband and wife jointly, parties of the second part, witnesseth: That the said parties of the first part, or their heirs, executors and administrators, at the request of the said parties of the second part, and in consideration of the money to be paid, and the covenants, as herein expressed, to be performed by the said parties of the second part, hereby agree to sell and convey to the said parties of the second part, all the following described land, situated in the township of Antwerp, county of Van Buren, State of Michigan, to wit."

Then follows a description of the land:

" The sum of $2,500 mentioned below is paid by a deed of certain lands on section 29 of Antwerp township aforesaid deeded by Walrath and wife to Eugene F. Prindle as a part of this transaction, said deed being subject to a mortgage of $1,500 assumed by said Prindle. And it is expressly agreed that if said Prindle is required to pay any more than $1,500 and interest thereon from October, 1905, to settle said mortgage, then said excess and all extra costs and expenses arising on account thereof shall be added to the purchase price of the land described in this contract and repaid to first parties hereto according to the terms of this contract, with the privileges and appurtenances thereunto belonging. And the said parties of the second part, for their heirs, executors, administrators and assigns, in consideration of the premises, hereby agree to purchase said land, and to pay as purchase money therefor to the said parties of the first part, their executors, administrators or assigns, the sum of twelve thousand dollars as follows, viz., $2,500 on the execution and delivery of this agreement. For the payment of the balance ($9,500) second parties agree to deliver all grapes grown on said premises to the Southern Michigan Fruit Association at Lawton, Michigan (or to such other parties as the parties hereto may agree upon). From the proceeds of said grapes second parties shall receive the price of all baskets and packages used in marketing said grapes. Of the balance second party shall receive one-third, and first parties two-thirds each year as payment of principal and

163 MICH.—17.

interest until all shall be paid in full. Each party shall collect his own share from said association. This contract shall be fully paid on or before twenty years from date, with interest at the rate of six per cent. per annum, to be paid annually on the whole sum from time to time remaining unpaid. And, also, that said parties of the second part will well and faithfully, in due season, pay or cause to be paid, all taxes and assessments, ordinary and extraordinary, for any purpose whatever, that shall be taxed or assessed upon the said land and appurtenances, including the year 1905. * * * It is further agreed that second parties have the option of paying fifty dollars or more on this contract at any time in addition to the amount arising from the grape crop above set forth. * * *

"In witness whereof the said parties hereto have hereunto set their hands and seals the day and year first above written.

"Signed, sealed and delivered in presence of:
"LOWELL A. PARKER,
"VERNE M. PALMER,

| | |
|---|---|
| "EUGENE F. PRINDLE. | [Seal.] |
| "EMMA A. PRINDLE. | [Seal.] |
| "GEORGE S. LANG. | [Seal.] |
| "AMELIA LANG. | [Seal.]" |

Then follows the acknowledgment. On the back of this contract appear the following indorsements:

| | |
|---|---|
| 1906, Dec. 4th, As interest | $570 00 |
| 1906, Dec 4th, On principal | 30 94 |
| 1907, Jan. 10, Rebate of 1906 | 38 50 |
| 1908, Feb. 10, On interest of 1907 | 266 54 |

The deed from Mr. Walrath and wife was made as provided in said contract. The record shows that the land mentioned in said deed was conveyed to Mr. Walrath by Mrs. Lang, and that the record title was never in Mr. Lang. Mr. Lang and his wife entered into the possession of the farm and have been in possession ever since. It does not appear that any payments have been made upon the contract except those before mentioned.

The following averments are contained in the declaration filed in the case:

"For that, whereas, heretofore, to wit, on the 25th day

of September, A. D. 1905, in the county of Van Buren, the said plaintiff, at the special instance and request of the said defendant, bargained with the said defendant to buy of the said defendant a certain tract of land situate, * * * and then entered into a land contract with the said defendant for the said purchase of said lands at and for a certain price, to wit, the sum of $12,000, $2,500 of which was paid down by means of a trade and the balance evidenced by said contract, and the said defendant by then and there falsely, deceitfully, and wrongfully and fraudulently, representing the said farm, * * * with intent to defraud, deceive, injure, and damage the said plaintiff and with knowledge of the falsity of said representations so made to the said plaintiff, then and there sold said farm to said plaintiff and procured from the said plaintiff his signature to said contract and procured and induced the said plaintiff to become obligated to him, the said defendant, in terms, conditions, and stipulations set forth in said contract, and caused the said plaintiff to procure the signature of his wife to said contract, all relying upon said false, deceitful, and fraudulent representations so made by the said defendant, and believing such representations and acting upon said false, deceitful, and fraudulent representations in bargaining for said lands and in signing said contract and in parting with his said land in exchange for the lands of the said defendant and in .obligating himself as per the terms and conditions of said contract, whereas, in truth and in fact * * * falsely, fraudulently, and wrongfully deceived and misled the said plaintiff into signing said contract, into turning over to him, the said defendant, the equality of $2,500 in cash and in obligating himself to the said defendant to pay the balance of the agreed purchase price of said farm, to wit, $9,500. * * * Again, all of which statements and representations were false and untrue, he on or about the 25th day of September, 1905, at the special instance and request of the said defendant, duly purchased said farm of and from said defendant at and for the said value of $12,000 and duly paid therefor $2,500 in other property, which was duly accepted by said defendant as payment thereon and duly covenanted and agreed to pay said defendant the balance of said $12,000 then amounting to $9,500, and having so purchased the same went into possession thereof, and during the seasons of 1906 and 1907 tilled and worked the same in a good

farmer-like manner, but during both of said seasons, because of the grape vines having been diseased and unproductive, the fruit thereon was not fit for the market or for consumption and became worthless, and the income therefrom was not of the value of the labor and expense of tilling and working the same, whereby and because of which the said plaintiff, for said two years of 1906 and 1907, received and obtained from said farm no income whatever and not sufficient to pay him for the labor and expense laid out in cultivating and working the same, whereby and because of which said misrepresentations and false and fraudulent inducements so held out knowingly and intentionally by said defendant to said plaintiff as an inducement to said plaintiff to cause him to so purchase said farm at and for said sum of $12,000, and because of said plaintiff having been so misled and fraudulently deceived by said defendant's publication and statement, by relying thereon, and so purchasing said farm, he has suffered great loss and damage in a large sum of money, to wit, in the sum of $10,000, wherefore he brings suit," etc.

The contract between the parties is dated September 25, 1905. This suit was brought in the fall of 1908. The points relied on for reversal are:

"(1) Errors in admitting testimony as to matters not material and tending merely to prejudice the defendant before the jury.

"(2) Errors in admitting testimony as to representations not set forth in the declaration.

"(3) In permitting testimony in contradiction of the record tending to show that Amelia Lang was not the owner of the Claus place, and that she made no claim that defendant had committed any fraud upon her individually; and in permitting the introduction of the contract, in evidence, and in overruling defendant's claims as to the fact of plaintiff and his wife being owners of the land involved by entireties, and in refusing defendant's request to charge in that particular as to the plaintiff's right to recover under the contract.

"(4) Error in the measure of damages as submitted in the charge of the court.

"(5) Error in denying defendant's motion for new trial on the ground that the verdict was excessive."

In our view of the case it will be necessary to consider only the third of these groups. It already appears that the written contract is made by Mr. and Mrs. Prindle as parties of one part, and by Mr. and Mrs. Lang as parties of the other part. It may be well to quote here some of the testimony of Mrs. Lang. She testified, in part, as follows:

"He (Prindle) talked to my husband at our home about the farm we now own, yes. Said that it was a good farm, was the best in the neighborhood all around Lawton; that they had started on a very low ebb, and they had worked very hard, so hard that he had injured his health; but now he had got his farm, so that they were fixed comfortably for life, in fact, he had made a big income. Yes, I am sure it was $4,000. He said he would like us to buy the farm; that we would be very satisfied, have a good home, have plenty to do with, if we went there, and we would be comfortable for life. The neighborhood was nice and the people of Lawton—well, we were in a nice neighborhood, and he was sure we would be satisfied if we made up our minds to purchase it from him.   *   *   *   In fact, he represented to us that, if we took the farm, it was so useful a farm we could get everything we wanted to live on there; that it would produce everything that we wanted to keep the farm going. He just spoke of his farm and the advantages of it, and how it was situated and just generally speaking of the farm as any one would tell, describe a property to some one else that didn't know anything about it. I don't remember seeing any booklet at that time. He said that some people were unfortunate enough to have their grapes situated so that they were right in the frost line; that some of them would year after year be frozen up and all the prospect of a crop would be destroyed.   *   *   *   I remember of the paper writing coming to my home at one time; yes, sir. I couldn't say whether Mr. Prindle handed it to my husband downtown, or whether he sent it by mail. We had it there in the house; yes, sir. After that Mr. Prindle came there several times. The first time he came after we had this contract, he stayed over night. He came several times and stayed. He always made our house his place that he used to come and stay when he was in the city, and spent the night with us.   *   *   *   He came

and stayed with us the night before he went to Texas, and he came and slept the night after he came from Texas, and the next morning as he was getting ready to return to Lawton he said: 'Mrs. Lang, I am not going to be in a hurry to get rid of my farm. I can make $4,000 income on my farm, and I cannot do that on any farm that I have seen. Mine is a mighty good farm, and I am not going to get rid of it in a hurry.' I said: 'Mr. Prindle, I wonder that you want to get rid of such a farm, if it is as good as you say.' He says: 'Mrs. Lang, I don't, except it was on account of my poor health. I thought when we had that house built that we never would leave that house for good unless I was carried out'—meaning unless he died and would have to be carried away. He said he thought Mr. Lang was pretty slow in coming and settling up affairs, and I replied: 'Mr. Lang will settle things just as soon as he possibly can, but this matter of the insurance on the Claus farm has to be cleared up before things can be settled properly, but just as soon as ever we can settle and arrange things satisfactorily to every one, we will do it. * * * I came down to Lawton with my husband to look at the farm. We put up at the Hotel Giddings the night, and the next morning Mr. Prindle came down with a surrey, and he took us to the Claus farm that we then owned—it was ours. We looked over the farm. Then he took us up to his farm, and showed us his grapes, and all of it, and went through the house, and I remember one instance, sir. There was a lovely crop of grapes there, and there were grapes loose on the ground, and my husband said to him: 'What are those grapes on the ground?' And he says: 'Why, the vines are so heavily laden with grapes that they can't carry all the grapes, and those you see on the ground are those that have dropped off simply because the vine cannot nurture them.' Those grapes on the ground were dried and shriveled. They were black. They had not dropped off to any great extent. The bunches were full. It was a lovely show of grapes there. My husband, Mr. Prindle, and I were alone. * * * When we went into the house, there were peaches in grape baskets placed along the kitchen, and Young's wife mentioned to Mr. Prindle would he take his share; that was all they had that year, and I believe there was about 18 baskets, because I remember that Mr. Prindle's share we packed into the surrey and took home to Mrs. Prindle. Mr. Prindle said that year the peach

crop had been a failure. He didn't say anything with reference to the condition of the peach trees. * * * In September when we were there looking at the farm, after we looked at the farm, we returned to Lawton for dinner. We were staying at Prindle's home. We came to Paw Paw that same day in the evening. We stayed in Paw Paw about three-quarters of an hour. We got back to Lawton just before supper time. The question came up again about this farm, and he was getting anxious about it. Of course we were saving all we had, all the available money we had, to put in the farm. We told Mr. Prindle that. I said: 'Mr. Prindle, are you sure that one-third of the grape crop will be sufficient to pay all the running expenses of this farm?' And he said: 'Mrs. Lang, you will have plenty to do with.' Then I says: 'I have got another question to ask you. Supposing that such a thing should happen that two-thirds of the crop there wouldn't be sufficient to pay the interest on this place, what then?' 'Then, Mrs. Lang, he says, 'I couldn't get my money. I would have to wait for it any time to the end of the 20 years, until all should be paid.' Before that he had talked over the arrangement and the bargain upon which he was going to let us have the land; yes, sir."

It is true that she testified that the Claus farm was her husband's and that she made no claim against defendant for damages; but it is impossible to read the record without reaching the conclusion that Mrs. Lang was as much interested in the transaction as was her husband. The doctrine of tenancy by the entireties is discussed at length in the cases of *Dickey* v. *Converse*, 117 Mich. 449 (76 N. W. 80, 72 Am. St. Rep. 568), and *Fowles* v. *Hayden*, 130 Mich. 47 (89 N. W. 571). In these cases many authorities are cited. We content ourselves with the following quotation from *Fowles* v. *Hayden, supra:*

"In *Speier* v. *Opfer*, 73 Mich. 35 (40 N. W. 909, 2 L. R. A. 345, 16 Am. St. Rep. 556), it is said:

"'In this case the property to be improved and benefited was held by husband and wife jointly, and not as the separate property of the wife. Only at the death of the husband could the wife claim it as her separate property. During the lives of both, neither has an absolute inheritable interest; neither can be said to hold an undivided half. They take by entireties, and at the

death of the wife the whole passes at once to the husband. *Manwaring* v. *Powell*, 40 Mich. 371; *Allen* v. *Allen*, 47 Mich. 74 (10 N. W. 113); *Ætna Ins. Co.* v. *Resh*, 40 Mich. 241. Neither has such a separate interest that he or she could sell, incumber, or devise, or which his or her heir could inherit. *Vinton* v. *Beamer*, 55 Mich. 559 (22 N. W. 40); *Fisher* v. *Provin*, 25 Mich. 347. It is an entirety, in which both take the same and inseparable interest. Neither can affect the other's rights by a separate transfer, and whatever will defeat the interest of one will defeat the other's. *Vinton* v. *Beamer*, *supra*.'

"In *Dickey* v. *Converse*, 117 Mich. 449 (76 N. W. 80, 72 Am. St. Rep. 568), there is a citation and review of the many authorities, making it unnecessary to call attention to them here. In that case it is said:

"'This species of tenancy grows out of the unity of husband and wife, and is unlike that of joint tenants, who are each seised of an undivided moiety. The husband and wife are each seised of the whole, and not of undivided moieties. *Hardenbergh* v. *Hardenbergh*, 18 Am. Dec. 378 (10 N. J. Law, 42), note.'

"It was held this rule applied to the crops growing upon the land, as well as the land itself."

It will be observed that the declaration does not allege, and the proofs do not disclose, that plaintiff parted with anything because of the alleged fraud and deceit except the $2,500 farm which was traded, the record title to which was never in him. The averment is that because of the fraud and deceit the plaintiff entered into the contract and persuaded his wife to sign the same. Mrs. Lang is just as much bound by the terms of this contract as is Mr. Lang. It is difficult to see how the wife can be disassociated from the contract which is the basis of the transaction. The situation as disclosed by the record shows that almost nothing has been paid upon the contract except the deed of the $2,500 farm, the record title to which was in the wife. Plaintiff and his wife both signed the contract. Instead of rescinding the contract and surrendering the farm, they retain the same and have had the use of it all these years. Cooley on Torts, p. 8, note; *Larsen* v. *Groeschel*, 98 Ind. 160; *Hallett* v. *Gordon*, 122 Mich. 567 (81 N. W. 556, 82 N. W. 827).

In the meantime the plaintiff has recovered a judgment against defendant of $6,500 for damages. To state the case is to show its injustice. Whatever interest was obtained by reason of the contract was shared by the wife as much as by the husband. We think the wife was a necessary party to the suit.

Judgment is reversed, and a new trial ordered.

OSTRANDER, HOOKER, MCALVAY, and STONE, JJ., concurred.