GORELICK v. SHAPERO.

1. HUSBAND AND WIFE—PROPERTY HELD BY THE ENTIRETIES NOT SUBJECT TO INDIVIDUAL DEBTS OF EITHER.
    Premises held by tenants by the entireties could not involuntarily be sold or incumbered for the debts of either.

2. BANKRUPTCY — TRUSTEE — FRAUD— COLLUSION—EVIDENCE—SUFFICIENCY.
    In a suit by a trustee in bankruptcy against the bankrupt and others from whom he had obtained loans and given security, claiming fraud and collusion, evidence *held*, to show no fraud.

3. SAME—ATTORNEY'S FEE—DISALLOWANCE.
    An attorney's fee of $2,500, claimed by the attorney for obtaining a loan of $10,000 from his mother and sister for the bankrupt, was properly disallowed by the decree of the court below.

Appeal from Wayne; Lamb (Fred S.), J., presid-

On liability of estate by entirety for husband's debts, see note in 36 L. R. A. (N. S.) 205.

ing.   Submitted October 27, 1922.    (Docket No. 34.)
Decided March 23, 1923.

Bill by Louis Gorelick, trustee in bankruptcy of
Louis Brodsky, against Bune Malke Shapero and
others to reach certain lands transferred in fraud of
creditors.    From a decree for plaintiff, defendants
appeal.   Reversed, and bill dismissed.

*Harold M. Shapero* and *William H. Gallagher* (*A.
W. Sempliner*, of counsel), for defendants Shapero and
Stiglitz.

*Beckenstein & Wienner*, for defendant Weinstein.

BIRD, J.   Defendant Louis Brodsky and his wife,
Sadie Brodsky, made contracts for the erection of an
apartment and business building on their lots in the
city of Detroit, described as lots 21 and 22, Crosman
and Cushing's subdivision, and which are known in
this record as "the Warren avenue property."   They
arranged for a mortgage loan thereon of $46,650, but,
under the terms of the loan, no money was to be ad-
vanced thereunder until the roof was on the building.
It took considerable money to finance the building up
to that point.    Brodsky and wife had only $4,000.
That was soon expended.    They very soon had to
have more money.    Brodsky applied to his brother-
in-law, Max Weinstein, one of the defendants herein,
for a loan.    Weinstein had no money to loan, but he
conveyed to Brodsky lot 3, Bolton's subdivision, known
in the record as the "Mack and LeMay property,"
with the permission to place a mortgage loan thereon.
Brodsky made a short loan thereon for $5,000.    It
soon became due and the party wanted his money.
Brodsky could not pay it and, besides, he needed more
money, so he applied to Sam Shapero, his attorney, to
obtain for him a loan of $10,000.   This loan Shapero

secured from his mother and sister and they insisted upon having security, not only on the Mack and LeMay property, but also on the Warren avenue property. Both were conveyed to them by deed as security for their loan. This $10,000 loan was not sufficient to take care of Brodsky's creditors and contractors. The workmen quit work just as the building was nearly finished. This severely embarrassed Brodsky. Soon afterward he was forced into bankruptcy proceedings and declared a bankrupt. Plaintiff, who was one of his creditors, was elected trustee of the bankrupt's estate. He filed this bill, claiming fraud and collusion between Brodsky and the other defendants with whom he had been doing business. The principal point of attack was the deed of both properties which was made to Bune Shapero and her daughter, Lillian Stiglitz, to secure the $10,000 loan. The issue was tried out and a decree made, providing that the Warren avenue property should be turned over to the trustee to satisfy the liens and claims in the following order:

"(*a*) The mortgages thereon in the aggregate amount of $46,650 and all accrued interest.

"(*b*) The allowable claims of the creditors of the estate of defendant Louis Brodsky and interest thereon at five per cent. per annum from date of allowance by referee in bankruptcy.

"(*c*) The balance then remaining, to the extent of seven thousand five hundred ($7,500) dollars with accrued interest, be deposited in this court for the use and benefit of defendants Lillian Stiglitz and Bune Malke Shapero, and all over such sum, if such there be, be deposited in this court for the use and benefit of defendant Louis Brodsky.

"(3) That in case there should be any deficiency in taking care of the claim of Lillian Stiglitz and Bune Malke Shapero up to the sum of seven thousand five hundred ($7,500) dollars out of the funds available for that purpose from the West Warren avenue property,

then the balance remaining of said $7,500 may be a lien upon the Mack and LeMay property.

"(4) That the defendants Lillian Stiglitz and Bune Malke Shapero are hereby ordered and decreed to execute and deliver to the plaintiff the necessary conveyances of the said West Warren avenue property, in trust, however, for the purposes herein above mentioned; and they are further ordered and decreed to convey and transfer to defendant Max Weinstein the Mack and Le May property, at such time as the claim of said defendants Lillian Stiglitz and Bune Malke Shapero to the amount of seven thousand five hundred ($7,500) dollars, shall have been satisfied out of the Warren avenue property primarily and any deficiency out of the Mack and LeMay property, or by cash in lieu thereof."

1. One of the first objections made to this decree is that the two lots which constituted the Warren avenue property were owned by Brodsky and his wife as tenants by the entirety, and that they being so held could not be subjected to the payment of Brodsky's individual debts. This appears to us as a very serious question. We have no opinion by the chancellor nor any brief from the appellee and, therefore, are deprived of their views on the question. The testimony shows that certain moneys of Sadie Brodsky went into the purchase price of the lots, and the conveyance was made to her and her husband. They being tenants by the entirety, the premises could neither be involuntarily sold nor incumbered for the debts of either. *Vinton* v. *Beamer*, 55 Mich. 559; *Lewis' Appeal*, 85 Mich. 340 (24 Am. St. Rep. 94); *Dickey* v. *Converse*, 117 Mich. 449 (72 Am. St. Rep. 568). See, also, *Beihl* v. *Martin*, 236 Pa. St. 519 (84 Atl. 953, 42 L. R. A. [N. S.] 555); *Meyer's Estate*, 232 Pa. St. 89 (81 Atl. 147, 36 L. R. A. [N. S.] 205, Ann. Cas. 1912C, 1240); *In re Beihl*, 197 Fed. 870.

It was not alleged in the bill, and the testimony does not show, that the tenancy was created for a

fraudulent purpose, nor was Sadie Brodsky made a party to the suit. Any finding by the decree that Louis Brodsky was the sole owner of the Warren avenue property would not be binding on Sadie Brodsky. Under this view, subdivision "*b*" of the decree heretofore quoted relating to the general unsecured claims would be of no force or effect. The balance of the claims are secured.

2. Considerable discussion is had between the defendants as to the readjustment made by the decree of the security of defendants Bune Malke Shapero and Lillian Stiglitz. In view of the conclusion we have reached in the case it will be unnecessary to discuss that matter.

3. Speaking generally of the allegations of fraud, it may be said that no fraud was shown in the several transactions. Brodsky never claimed to own the Mack and LeMay property, except for a qualified purpose, to which Weinstein, the owner, had consented. There was no claim by Mrs. Shapero and her daughter Lillian that they owned the Mack and LeMay property or the Warren avenue property. They had deeds thereof, but those were taken by them to secure their $10,000 loan. Brodsky was turning and twisting in every conceivable way to obtain loans and get his building finished. He traveled some very rough roads, as people usually do who get themselves into the position he was in, but the record fails to show any fraud upon his part in his dealings with the other defendants. Whenever he secured money on the several loans he applied it on claims for materials and labor. The only evidence of questionable or fraudulent conduct we find in the record was the act of Brodsky's attorney, charging him $2,500 for securing a loan of $10,000. The attorney had no difficulty in obtaining this loan, as it was made by his mother and

sister.   This charge was very properly disallowed by the decree.

The decree will be reversed and the bill dismissed, with costs to the defendants who have appeared and filed briefs in this court.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, SHARPE, and STEERE, JJ., concurred.   MOORE, J., did not sit.