204 P.2d 990

McDONALD v. SENN et al.
No. 5022.

Supreme Court of New Mexico.
March 11, 1949.

Frazier & Quantius, of Roswell, for appellant.

E. E. Young, of Roswell, for appellees.

PER CURIAM.

The original opinion filed herein has been withdrawn and the following substituted in considering motion for rehearing.

BRICE, Chief Justice.

The question for decision is whether the wife's interest in the community real estate may be sold under foreclosure of a purported lien arising on a money judgment against the wife alone for a personal tort committed during coverture in the operation of an automobile constituting her separate property.

The facts are as follows: The plaintiff (appellant) sued defendants Senn to recover damages for injuries alleged to have been inflicted upon him by defendants in the negligent operation of an automobile. The trial court dismissed the case as to the husband, to which the plaintiff did not object. The trial resulted in a personal judgment against defendant Mrs. Senn for upwards of $3500, from which judgment she appealed to this court, resulting in its affirmance. See McDonald v. Senn, 50 N.M. 222, 174 P.2d 564. A transcript of the judgment was filed, as provided by Sec. 19-906 N.M. Sts. 1941, which is as follows:

"Any money judgment rendered in the Supreme or district court shall be docketed by the clerk of the court in a book kept for the purpose, and shall be a lien on the real estate of the judgment debtor from the date of the filing of a transcript of the docket of such judgment in such book in the office of the county clerk of the county in which such real estate is situate."

The evidence in the original suit disclosed that the car was owned by the defendant Mrs. Senn; was being driven, at the time of the accident in which plaintiff was injured, by her nephew, a member of their family, and that both defendants Senn were in the car at the time of the accident.

It was to foreclose the purported lien of the judgment mentioned that plaintiff in that action commenced this separate suit to foreclose the claimed lien against described real estate. In his complaint he alleged "that Mrs. J. E. Senn owns a vested community interest" in such real estate.

It is the judgment in this second suit that is now before us for review. No testimony was taken at the trial, and the case was decided on the pleadings. They consisted of the plaintiff's complaint and the defendant's motion to dismiss, to which was attached Exhibit "A", an affidavit of Mrs. J. E. Senn, the judgment debtor. In this affidavit, affiant recited that she was the wife of defendant J. E. Senn at the time of verifying the affidavit, and at the time the judgment was rendered against her. She also stated that the real estate sought to be foreclosed was community property of herself and her husband. The basis of the motion to dismiss was that no relief by way of foreclosure of the judgment lien could be granted because the judgment was against Mrs. Senn alone, and

the lien was sought to be foreclosed against real property which was a part of the community estate of defendant and her husband at the time the judgment was rendered. The right to sell Mrs. Senn's community interest in the property for the purpose of satisfying the judgment against her was challenged. The court found in substance that the judgment was for a personal tort of the wife committed in connection with the operation of an automobile owned by her, and that the tort was not committed for the benefit of the community. Accordingly, the court concluded:

"No suit may be brought by or against the community property, as such, for torts committed by the wife, unless the torts of the wife were committed for the benefit of the community."

The judgment rendered was one dismissing the plaintiff's complaint.

We have not had occasion to decide the question, and the decisions of the courts of the original community property states (counting Washington as one) disclose that only California, Washington, and Arizona have decided it.

▮ The law in this state regarding the property rights of husband and wife is statutory, but was modeled after the civil law of Spain and Mexico and those laws will be looked to for definitions and interpretations, Beals v. Ares, 25 N.M. 459, 185 P. 780; Levy v. Kalabich, 35 N.M. 282, 295 P. 296. These statutes are as follows:

(1941 Compilation):

"65-206. Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other."

"65-301. The property rights of husband and wife are governed by this chapter unless there is a marriage settlement containing stipulations contrary thereto."

"65-302. Husband and wife may hold property as joint tenants, tenants in common, or as community property."

"65-304. All property of the wife owned by her before marriage and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is her separate property. The wife may without the consent of her husband convey her separate property."

"65-305. All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is his separate property."

"65-306. The earnings of the wife are not liable for the debts of the husband."

"65-308. The separate property of the husband is not liable for the debts of the wife contracted before the marriage."

"65-309. The separate property of the wife is not liable for the debts of her husband, but is liable for her own debts, contracted before or after marriage."

"65-401. All other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property. * * *"

"65-402. The property of the community is not liable for the contracts of the wife, made after marriage, unless secured by a pledge or mortgage thereof executed by the husband."

"65-403. The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate; Provided, * * * that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect, except, that the husband may convey directly to the wife or the wife to the husband without the other joining in the conveyance."

"65-405. Whenever the husband is non compos mentis or (here follows other grounds) or for any other reason is incapacitated to manage and administer the community property the wife may present a petition duly verified to the district court of the county wherein any of the community property is located or situated, stating the name of her husband, a description of all community property, both real and personal, and the facts which render him incapacitated to manage and administer the community property and praying that she be substituted for her husband, as the head of said community, with the same power of managing, administering and disposing of the community property, as is vested in the husband by this chapter."

"65-408. Upon the hearing of the petition so filed by the wife the court shall render judgment therein, either dismissing said petition or adjudging the wife thereafter to be the head of said community, with full power of managing, administering and disposing of the community property, either real or personal, with such limitation therein as to the court may appear to be in furtherance of justice."

"31-109. Upon the death of the husband one-half of the community property goes to the surviving wife and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes one-fourth to the surviving wife and the remainder in equal shares to the children of the decedent and further as provided by law. * * *"

"25-702. Whenever the husband and wife shall have permanently separated and no longer live or cohabit together, as husband and wife, either may institute suit in the district court for a division of property, or for the disposition of the children, without asking for or obtaining in said suit a dissolution of the bonds of matrimony; or the wife may institute suit for alimony alone."

The civil law of Spain, as translated by Schmidt, sets out the Spanish-Mexican laws in relation to the property of married persons.

. Under that law the income from the separate property of the spouses belong to the community, and the husband can dispose of both the real and personal property without the wife's consent; otherwise, it is substantially like that of New Mexico. See Civil Laws of Spain and Mexico by Schmidt, Arts. 43 et seq.

We start with the established fact that the plaintiff has a judgment lien against the defendant's "real estate". If her interest in this community property is "real estate of the judgment debtor", as contemplated by Sec. 19-906, N.M. Sts. 1941, supra, then it may be foreclosed as attempted here under the following statute:

"Any person holding a judgment lien on any real estate situated in this state may subject said real estate to the payment of his judgment by a foreclosure suit in any court of competent jurisdiction, such suit to be instituted and prosecuted in the same manner as ordinary suits for the foreclosure of mortgages, and the sale thereunder to be held in the same manner and subject to the same rights of redemption as in sales held under mortgage foreclosure decrees." Sec. 21-114, N.M. Sts. 1941.

Real estate is ordinarily defined as lands, tenements and hereditaments. There can be no doubt but that one having a vested interest in land owns real estate.

"Under most statutes, it is a vested interest in the real estate of the judgment debtor which is made subject to the lien of a judgment against him. Under some statutes, however, even an inchoate interest has been held to be embraced by the lien of a judgment against the owner of such interest. It has also been adjudged that the lien of a judgment or execution on land includes all incidents and appurtenances, including easements, used and enjoyed at the time of the attachment of the lien. However, a mere charge or beneficial privilege

in real estate, being incapable of sale under execution, has been regarded as not subject to the lien of a judgment." 31 A. J. "Judgments", Sec. 314.

"Undivided interests in real estate may be subject to judgment or execution liens. If the judgment is rendered against two or more persons, it is a lien on the realty held by the judgment debtors by a tenancy in common, as well as on realty held by them in severalty. If the judgment is rendered against a part owner, it binds his moiety of the property, and if the land is sold, is enforceable against his share of the proceeds." 31 A. J. "Judgments", Sec. 318.

The courts are not in harmony on the question of whether a judgment lien attaches to equitable interests in real property. That the lien does attach to such interest is held by a number of courts, Fridley v. Munson, 46 S.D. 532, 194 N.W. 840, 30 A.L.R. 501; Eckley v. Bonded Adjustment Co., Wash., 190 P.2d 718, 1 A.L.R.2d 717, while the California and other courts hold that judgment liens attach only to vested legal interests in real estate, People v. Irwin, 14 Cal. 428; Belieu v. Power, 54 Cal.App. 244, 201 P. 620; Helvey v. Bank of America Nat. Trust & Savings Ass'n, 43 Cal.App.2d 532, 111 P.2d 390. On the question generally see the annotation in 30 A.L.R. 504. If the wife's interest in community real property in this state is a vested legal interest (and we have so held)

we need not decide that question; but see Scheer v. Stolz, 41 N.M. 585, 72 P.2d 606.

Our statutes do not provide for any specific liability of the community property; only that for which it is *not* liable. It is not liable for the contracts of the wife made after marriage unless secured by a pledge or mortgage thereof, signed by the husband. Sec. 65-402, N.M. Sts. 1941. It is not specifically exempted from liability for the torts of either husband or wife.

It seems to be conceded, and we so hold following a number of this court's decisions, that the wife's interest in community property in New Mexico is vested in her. In re Miller's Estate, 44 N.M. 214, 100 P.2d 908; Baca v. Belen, 30 N.M. 541, 240 P. 803; Dillard v. New Mexico State Tax Commission, 53 N.M. 12, 201 P.2d 345. And see Beals v. Ares, 25 N.M. 459, 185 P. 780. This being conceded, it would seem to follow that her vested interest is subject to plaintiff's judgment lien. 10 Thompson on Real Property, Perm.Ed., Sec. 5536.

But it is said that we adopted our community property law largely from California, and the courts of that state have held that a duly docketed judgment against the wife is not a lien against the community real estate, or the wife's interest therein, and cite the following supporting decisions: Smedberg v. Bevilockway, 7 Cal. App.2d 578, 46 P.2d 820; Grace v. Car-

penter, 42 Cal.App.2d 301, 108 P.2d 701; McClain v. Tufts, 83 Cal.App.2d 140, 187 P.2d 818; Grolemund v. Cafferata, 17 Cal. 2d 679, 111 P.2d 641.

It is true, the New Mexico community property laws were largely an adoption of the California statutes. But this court has never followed the decisions of the California courts with respect to the interests of the spouses in community property; nor have the courts of any other state done so. This conflict of decisions goes back to an early date.

When the area that is now New Mexico was ceded by Mexico to the United States, the Spanish-Mexican community property system was continued in force, and it, with the other laws of Mexico, not inconsistent with the Constitution of the United States, and the Kearney Code, a code of laws promulgated by the established military government and approved by the Congress of the United States, remained the established law until changed by congressional or legislative acts. By the adoption of the common law in 1876, N.M. Sts. 1941, § 19-303, the civil law, except as it had been enacted into statutes, was repealed. Beals v. Ares, supra.

A number of statutes regarding the tenure of property by husband and wife, not material here, were enacted prior to 1907.

For an interesting historical sketch of all community property laws of New Mexico, see Hernandez v. Becker, 54 F.2d 542, opinion by Judge Orie L. Phillips, presiding Judge of the Tenth Circuit Court of Appeals. The legislature of 1907 enacted laws on the subject, which, with a few amendments, is the law today.

It was held by the early California decisions, see Van Maren v. Johnson, 15 Cal. 308, which accepted Guice v. Lawrence, 2 La.Ann. 226, as authority, that the husband owned the community property under the Spanish civil law, and that the interest of the wife was a "mere expectancy," and such, it was held, was her interest therein in that state. Following the California decisions and Guice v. Lawrence, supra, the New Mexico territorial Supreme Court, assuming that law, except as modified by statute, to be in force here, not only held that the interest of the wife in the community property was a "mere expectancy," but that we had adopted with the Spanish-Mexican law concerning the tenure of property, that law with reference to its forfeiture by the wife for adultery: Barnett v. Barnett, 9 N.M. 205, 50 P. 337; Reade v. De Lea, 14 N.M. 442, 95 P. 131. There was a vigorous dissent in the De Lea case by Judge Abbott, who asserted that the interest of the wife was equal to that of the husband, and that it was a present, vested, and tangible interest.

The De Lea case was reversed by the Supreme Court of the United States, Ar-

nett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A., N.S., 1040, in an opinion by Mr. Justice Holmes, in which, after citing Spanish law, the court concluded that the wife had a greater interest than a mere expectancy. See Garrozi v. Dastas, 204 U.S. 64, 27 S.Ct. 224, 51 L.Ed. 369.

Later this court held in Beals v. Ares, 25 N.M. 459, 185 P. 780, that the wife, under the New Mexico Act of 1907, had a present, one-half interest equal to that of the husband, in the community property.

The case of Guice v. Lawrence, supra, which introduced the "mere expectancy" doctrine in this country, was overruled by the Supreme Court of Louisiana in Phillips v. Phillips, 160 La. 813, 107 So. 584. It is apparent that the cases of Arnett v. Reade, supra, and Beals v. Ares, supra, influenced the Louisiana court's decision, as these cases are cited, among others, as authority for overruling the Guice case.

The theory that the interest of the wife in the community property is a "mere expectancy" was the law of California until abolished by statute in 1927. It has been repudiated by court decisions when questioned in other community property states; and in all of them except California it is now the law that the wife has a present, vested, one-half interest therein. The California Supreme Court holds that the Statute of 1927, Cal.Civ.Code, Sec. 161a, did not change the wife's interest from a "mere expectancy" to a vested right, Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641, 644, and as a consequence her interest is not subject to a statutory judgment lien.

The California court did not hold in the Grolemund case that the interest of the wife remained a "mere expectancy" after the Act of 1927. Indeed it could not, as its language will not permit of it. It does hold that, whatever it may be, her interest is not vested in her; but if it was vested in her, it would be liable for her torts and subject to a statutory judgment lien. The language of the California court is as follows:

"* * * Though the court in the Smedberg case did not discuss the effect of section 161a, it reasonably can be inferred from that decision that the District Court of Appeal was of the opinion that section 161a of the Civil Code does not change the nature of the wife's interest to a vested one so as to give her creditors the right of sequestration by attachment, execution or any other legal proceeding. Otherwise, her half of the community property would have been subjected to a lien by the trustee in bankruptcy, for not only has he under the Bankruptcy Act the right of the bankrupt, but also the rights of the judgment and other creditors. * * *"

This language cannot be otherwise reasonably interpreted. The California cases will be further considered in this opinion.

Counsel have cited no authority, and we have found none, which holds that non-exempt vested interest in land is not subject to a judgment lien, under statutes similar to those of New Mexico. The Supreme Court of California has so held since People v. Irwin, 14 Cal. 428. See Helvey v. Bank of America Nat. Trust & Savings Ass'n, 43 Cal.App.2d 532, 111 P.2d 390.

We would be content to stop here, but certain contentions are made which, it is asserted, renders vested interests of the wife exempt from liability for her torts, which should not go unanswered.

██ It is urged that a community estate is similar to that of estates by the entireties; to which a lien of a judgment against one of the spouses cannot attach. But the whole of an estate by the entirety is vested by a fiction of law in each of the spouses, so that the interest of one cannot be taken alone. "Estates by the entireties are creatures of the common law, created by legal fiction, and based wholly upon the common law doctrine that husband and wife are one, and therefore there is but one estate and, in contemplation of law, but one person owning the whole * * * estate by entireties has no moities. Each owner holds the entirety." 4 Thompson on Real Property, Perm.Ed., Sec. 1803; Hernandez v. Becker, 10 Cir., 54 F.2d 542; Phillips v. Krakower, 4 Cir., 46 F.2d 764; Fairclaw v. Forrest, 76 U.S.App.D.C. 197, 130 F.2d 829, 143 A.L.R.

1154. There is no similarity between the two, except as to the husband and wife feature.

Estates by the entireties were abrogated in this state by Sec. 65-206, 65-301, and 65-302, N.M. Sts. 1941, supra. That was the conclusion of the Supreme Court of California in construing similar statutes. Swan v. Walden, 156 Cal. 195, 103 P. 931, 134 Am.St.Rep. 118, 20 Ann.Cas. 194.

Where it has been found necessary to segregate the husband's or wife's interest in community property the courts have found legal principles to justify it. Dillard v. New Mexico State Tax Commission, supra; Oglesby v. Poage, 45 Ariz. 23, 40 P. 2d 90; Cullum v. Lowe, Tex.Civ.App., 9 S.W.2d 70.

██ It is said that the husband's power of management and control is such that community property cannot be liable for the wife's torts.

In the Dillard case [53 N.M. 12, 201 P. 2d 350] we quoted the following with approval from Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 59, 75 L.Ed. 239:

"In that case [Warburton v. White, 176 U.S. 484, 494, 20 S.Ct. 404, 44 L.Ed. 555, 559] it was held that such agency of the husband was neither a contract nor a property right vested in him, and that it was competent to the legislature which created the relation to alter it, to confer the agency

on the wife alone, or to confer a joint agency on both spouses, if it saw fit—all without infringing any property right of the husband. Citing Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A., N.S., 1040.

"The reasons for conferring such sweeping powers of management on the husband are not far to seek. Public policy demands that in all ordinary circumstances, litigation between wife and husband during the life of the community should be discouraged. Law-suits between them would tend to subvert the marital relation. The same policy dictates that third parties who deal with the husband respecting community property shall be assured that the wife shall not be permitted to nullify his transactions. The powers of partners, or of trustees of a spendthrift trust, furnish apt analogies.

"The obligations of the husband as agent of the community are no less real because the policy of the State limits the wife's right to call him to account in a court. Power is not synonymous with right. Nor is obligation coterminous with legal remedy. The law's investiture of the husband with broad powers, by no means negatives the wife's present interest as a co-owner."

Some agency is necessary through which the community can transact business. The legislature selected the husband, the titular "head of the family", as the one best suited to handle that part of the affairs of the community. However, this control is not a property right that cannot be taken away as well as given. In fact, the legislature has provided that in certain specified instances, followed by the general provision "or for any other reason [he (the husband)] is incapacitated to manage and administer the community property," the wife may be substituted for him as head of the community, "with full power of managing, administering and disposing of the community property, either real or personal, with such limitation therein as to the court (district court) may appear to be in furtherance of justice."

Now assume a case in which the wife is substituted for the husband as head of the community, with all of his statutory powers revoked and conferred on her. In such case does the community property become liable for the wife's torts and exempted from liability for the husband's torts. merely because of the change in the head of the community? Would the husband lose his vested rights, or would her interest become vested (if not already) by reason of it? It is obvious that the rights of the parties would not be affected by the change, except as to management. Poe v. Seaborn, supra.

It was asserted in the Dillard case, as it is here, that as the wife's interest in community property goes to the husband at

her death, and his interest is subject to his testamentary disposition the husband must have a greater interest in the community property than the wife. We stated in answer to this contention:

" * * * This court answered that question in Re Miller's Estate, supra, in which we said, 'That each spouse, *irrespective of survivorship,* at all times has an ever-present and existing vested interest in the community property equal unto each other,' and we so held in Re Chavez's Estate [34 N.M. 258, 280 P. 241, 69 A.L.R. 769] supra. No one has a vested interest in property after death. The power of disposition during his lifetime, to become effective after death, may be given or taken away, at the will of the legislature. The fact that the laws of some states permit the wife to dispose of her community property by will during the husband's lifetime is totally immaterial. The same legislature may change the law in favor of the wife or husband without disturbing vested rights." (Emphasis ours.)

We cited and quoted from In re Ward's Estate, 183 Wash. 604, 49 P.2d 485, 102 A.L.R. 496; Commonwealth v. Fleet's Ex'r, 152 Va. 353, 147 S.E. 468; I Page on Wills, Lifetime Ed., Sec. 25.

The several considerations last named were the bases of the conclusion of the California court in the Grolemund case, that in California the interest of the wife in community property is not vested in her. Every question here raised was decided by us against defendant's contention in Dillard v. New Mexico State Tax Commission, supra; and a reference to that case should be sufficient to dispose of them here.

The defendant, finding the general rule that vested interests in real property are subject to judgment liens a barrier, attempts to bring her case in line with the California decisions, by the untenable argument that the wife's interest in community property in California is vested as it is in New Mexico. Sec. 161a of the California Civil Code, which it is asserted, creates in her such vested interest, is as follows:

"The respective interests of the husband and wife in community property during the continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property."

So, contrary to the conclusion of the California court in the Grolemund case, it is asserted here that under Sec. 161a of the California Civil Code (of which we have none similar), the wife's interest *is in fact vested,* the opinion of the Supreme Court of California to the contrary notwithstand-

ing. To support this view, two Law Review articles are cited, both written, no doubt, before the Grolemund decision; also some Federal tax cases. We will not review these articles or the cases, but regarding the latter or a similar Federal case which held the wife's interest is vested, the California court said in the Grolemund case [17 Cal.2d 679, 111 P.2d 646]:

"* * * As example of these, we take occasion to make brief comment on the leading case of United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714, which expresses the prevailing view of the federal courts in its holding that the wife in California has such a present and vested interest in the community property that she may file a separate income tax return. We do not dispute the controlling effect of the rule announced in that decision on taxation questions involving like legal principles, but it has no bearing on the totally different situation presented here requiring determination of whether the wife's interest is such as will exclude the theory that the husband may manage and control, as well as create a liability against community property."

But, nevertheless, it is here contended that "the wife's interest is no less a vested interest in California than it is in New Mexico." Such specious argument is in the very face of the Grolemund case. In fact, it is this difference in the construction of the statutes by the respective state courts that brings about the different result.

The assertion is made that four decisions of the courts of California are directly against our holding on this question, to-wit, the Smedberg, Grace, Grolemund, and McClain cases, supra.

The Grolemund case alone was decided by the California Supreme Court and is the California law on this question. The reasoning of that case leads to the Court's conclusion that the wife does not have a vested interest in community property in California, thus bringing it within the doctrine of People v. Irwin, 14 Cal. 428, cited in Helvey v. Bank of America Nat. Trust & Savings Ass'n, 43 Cal.App.2d 532, 111 P. 2d 390, to-wit: that a judgment lien attaches only to *vested interests* in real property. The California decisions are necessarily bottomed upon the holding that Sec. 161a of the Civil Code "does not change the nature of the wife's interest to a vested [interest]"; if it did (quoting from the Grolemund case) "* * * her half of the community property would have been subjected to * * * the rights of the judgment and other creditors." Anything to the contrary in the Smedberg, Grace, and McClain cases must give way to this higher authority.

If the California Supreme Court had held that the wife's interest was vested in her, as it is asserted here, its conclusion would necessarily have been identical with

ours. The California Supreme Court's construction of that state's statutes should be binding on the world, and we accept it as the law of California. The California Supreme Court having concluded that the wife's interest in the community property in that state is not vested in her, the California decisions are not authority here, as our holding that the wife's interest *is vested in her, forces a different conclusion.*

The Federal tax cases are controlling only in Federal tax questions, or cases involving like legal principles. It is so held in the Grolemund case.

The question has not been decided by the Courts of Texas, Nevada, and Idaho. The question here considered has not been decided in Texas possibly because of the common law liability of the whole of the community property, as well as the separate property of the wife for damages resulting from her torts. Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S.W. 694.

In Louisiana there is no liability for damages sounding in tort except where it is expressly or impliedly authorized by the codal articles or statutes of the state. Under the statutes of Louisiana the wife alone is liable for her torts. Adams v. Golson, 187 La. 363, 174 So. 876. And see Ward v. Trimble, La.App., 20 So.2d 765; Fairbanks, Morse & Co. v. Bordelon, La. App., 198 So. 391; Adams v. Golson, 187 La. 363, 174 So. 876; Matulich v. Crockett, La.App., 184 So. 748.

The Washington and Arizona courts hold that the community property of the spouses is liable only for community debts and torts, and not for those of either the husband or wife, Schramm v. Steele, 97 Wash. 309, 166 P. 634; Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175. The courts of California, in construing statutes apparently identical in meaning, hold that there are no such things as community debts in California. "That all debts which are not specifically made the obligations of the wife are grouped together as the obligations of the husband and the community property"; that the community property is liable for the husband's contracts and tort debts, and is not liable for either the wife's contract or tort debts. Grolemund v. Cafferata, supra; Smedberg v. Bevilockway, supra; Grace v. Carpenter, 42 Cal.App.2d 301, 108 P.2d 701. Regarding these differences, it was said in the Grolemund case:

"Appellant advances the argument that the statutes of Washington and the statutes of California regarding community property are the same, and, therefore, the rules announced in the decisions of Washington courts interpreting their code sections should be followed here. This contention is singularly devoid of merit in view of the fact that the underlying the-

ories of the community system in the two states are entirely distinct. The Washington statutes are based on the theory of tenancy by entireties, with its fundamental concept of 'community debts', and in that state the community property is not liable for the separate debts of the husband, much less of the wife, but is liable only for so-called 'community debts'. Cal.Jur.Supp., vol. 3, p. 665, sec. 147, and cases there cited. For example, in Sun Life Assur. Co. v. Outler, 172 Wash. 540, at page 544, 20 P.2d 1110, at page 1112, the Washington court said: 'The test of a community obligation is: "Was the transaction carried on for the benefit of the community?"' Thus, in Washington where the system makes the community property responsible only for 'community debts' or 'community liabilities', the community property cannot be reached for the individual tort of either the husband or wife. But in California there is no like concept of 'community debts', though occasionally the courts in this state refer to such, overlooking the fact that the phrase is not appropriate to the California system."

The concepts of community property as determined by the great courts of Washington and California, in construing substantially identical statutes, are fundamentally different. The California cases were decided long after we adopted the California statutes. To follow them we would overrule New Mexico cases of long stand-

ing. We are free to adopt either of these theories, or a different one, if we are not satisfied with either, and we are not.

It is the rule in this state that we should look to the Spanish-Mexican law for definitions and interpretations affecting our community property statutes. Beals v. Ares, supra.

While the Spanish-Mexican law did not provide for damages for all classes of common law torts, it did provide for the judicial segregation of the community property so that the moiety of one spouse could be applied to damages or forfeited for his or her "delito", a term applicable to both a criminal offense and a civil wrong. I de Funiak, Sec. 181. The Spanish law (Novisima Recopilacion 1805, Book 10, Title 4, Law 10) is as follows:

"On account of the delict which the husband or the wife may commit, though it may be heresy, or of any other nature, let not the one, by reason of the other's delict, lose his own property, nor his half of the earnings got during the marriage; and we order that all the increase during the marriage be held as ganancial property until for such delict the property of either of them be declared (promulgated) by sentence, and this although the delict be of nature that imposes the penalty 'ipso jure.'"

The Spanish community property laws and commentaries thereon by the Spanish

commentators are set out in Vol. II of de Funiak's work. The author states:

"It was provided in the Spanish law by statute of long standing that neither spouse was liable to lose his or her separate property or his or her half of the community property on account of any delict which the other spouse might commit. Since the term 'delict' (delito) of that period of Spanish law was a general term applicable to both a criminal offense and a civil wrong, the statute was applicable to save the property interests of the innocent spouse from liability for fine, penalty or confiscation imposed on the guilty spouse because of a criminal offense and from liability incurred by reason of the civil wrong committed by the guilty spouse. We are not concerned at the moment with the matter of criminal offenses but with civil wrongs or what we would describe as torts. By reason of the statute mentioned, debts incurred through the delict of either spouse were not payable from that part of the common property which belonged to the innocent spouse * * *."

It is specifically provided by statute, Sec. 65-402 supra, that the community property is not liable for the wife's contracts; but nothing is said of the wife's torts. It would seem that if the legislature had intended that her interest should be exempt from liability for her torts, it would have so provided as has been done in other states.

Likewise, it would appear from the fact that the wife's interest is exempt from her contract liability, that the legislature intended that tort liability should not be exempt. Proper charges and credits may be made, as in cases where community funds are used to improve the separate property of one of the spouses.

█ The state's public policy on the subject of community property is expressed in the statutes, interpreted in the light of the Spanish-Mexican law. So interpreting them, no reason appears for holding that the defendant's vested interest in the community real property cannot be segregated so that it can be subjected to the plaintiff's statutory judgment lien.

To palliate the apparent injustice of the assertion that the wife's community interest is not liable for her torts, it is stated that "the husband in New Mexico is liable for his wife's torts committed after marriage not done by means of, or in the use of, or in the assertion of some right in reference to her separate property." An old California case so holds.

The question is not presented and is not decided. But it is the opinion of the writer, after an exhaustive study, but not necessarily that of any other member of this court, that the common law rule referred to has long since been abrogated upon the theory that a rule of law must

fall when the reasons for it no longer exist.

The modern tendency of courts of the American states and the British Dominions, in the absence of a specific repealing statute, is to hold that the "Married Women Acts" have abrogated the common law liability of husbands for the torts of wives. The great weight of authority supports this view, Lane v. Bryant, 100 Ky. 138, 37 S.W. 584, 36 L.R.A. 709; Goken v. Dallugge, 72 Neb. 16, 99 N.W. 818, 101 N.W. 244, 103 N.W. 287, 9 Ann.Cas. 1222; Harris v. Webster, 58 N.H. 481; D. Wolff & Co. v. Lozier, 68 N.J.L. 103, 52. A. 303; Gustine v. Westenberger, 224 Pa. 455, 73 A. 913; Culmer v. Wilson, 13 Utah 129, 44 P. 833, 57 Am.St.Rep. 713; Foster v. Ingle, 147 Tenn. 217, 246 S.W. 530, 27 A.L.R. 1214; Curtis v. Ashworth, 165 Ga. 782, 142 S.E. 111, 59 A.L.R. 1457; Wolf v. Keagy, 33 W.W.Harr., Del., 362, 136 A. 520; Quinn v. Beales, 1924, 20 Alberta L.R. 620; Brown v. Holloway, 1909, 10 C.L.R., Australia, 89; Bourland v. Baker, 141 Ark. 280, 216 S.W. 707, 20 A.L.R. 525; Martin v. Robson, 1872, 65 Ill. 129, 16 Am. Rep. 578; Boutell v. Shellaberger, 264 Mo. 70; 174 S.W. 384, L.R.A.1915D, 847; Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, L.R.A.1915A, 491, Ann.Cas.1915D, 1197; Schuler v. Henry, 42 Colo. 367, 94 P. 360, 14 L.R.A.,N.S., 1009; Norris v. Corkill, 32 Kan. 409, 4 P. 862, 49 Am.Rep. 489; Lawer v. Kline, 41 Wyo. 167, 282 P.

1061; Bryant v. Smith, 187 S.C. 453, 198 S.E. 20.

A few of the older cases hold the common law rule governs in the absence of a specific repealing statute. McElfresh v. Kirkendall, 36 Iowa 224; Morgan v. Kennedy, 62 Minn. 348, 64 N.W. 912, 30 L.R.A. 521, 54 Am.St.Rep. 647; Scott, Com'r v. Brazile, Tex.Com.App., 292 S.W. 185; Kellar v. James, 63 W.Va. 139, 59 S.E. 939, 14 L.R.A.,N.S., 1003; Seroka v. Kattenberg, 1886, L.R. 17 Q.B. Div. 177; Zeliff v. Jennings, 61 Tex. 458.

It is stated in two or three of these cases that this is the majority rule, Zeliff v. Jennings, supra; Henley v. Wilson, infra, and it was at the date of these decisions; but as will be seen by the array of opposing authorities, it is not so now.

A number of courts hold that while the common law is in force as to the husband's liability for the wife's purely personal torts, it is repealed as to torts committed in the management of her separate property. Boutell v. Shellaberger, supra; Mangan v. Peck, 111 N.Y. 401, 18 N.E. 617; Cole v. De Trafford, Eng., 1 K.B. 911; Greene v. Miller, 102 Fla. 767, 136 So. 532; Henley v. Wilson, 137 Cal. 273, 70 P. 21, 58 L.R.A. 941, 92 Am.St.Rep. 160.

Many states have enacted statutes which specifically repealed this common law rule, among them are Alabama, Illinois, Michigan, Maine, Massachusetts, Missouri, Con-

necticut, Indiana, New York, Ohio, Rhode Island, South Carolina, South Dakota, Vermont, Washington, Georgia, North Carolina, Ontario.

The question of whether the English Statute enlarging the rights of married women with respect to property, abrogated the liability of the husband for her tortious acts, was decided in the negative in Seroka v. Kattenberg, 17 Q.B.D. 177. This ruling was questioned in Cuenod v. Leslie, et ux., 1909, 1 K.B. 880, in the opinion of Moulton, L. J. It was his view that the Married Women's Property Act of 1882 had released the husband from liability for torts of the wife, but the other judges merely stated that they were bound by the Seroka case and refused to pass upon the question. The opinion of Moulton, L. J., however, was overruled by the House of Lords in a three to two decision in Edwards v. Porter (1925), A.C. 1, and see Capel v. Powell, 17 C.B.N.S. 744, 122 E.C.L. 744; Beaumont v. Kaye, 1904, L.K.B. 294; Liverpool Etc. Assn. v. Fairhurst, 9 Exch. 429; Wright v. Leonard, 11 C.B.N.S. 258, 103 E.C.L. 258.

The reasons for holding that the Married Women Acts had completely repealed the common law rule are stated in a Kentucky case, as follows:

"The liability of the husband at the common law was based on the idea of his absolute dominion over the person of his wife, with the right to all of her personal and the use of her real, estate, to the rents and profits of her realty, to her earnings and labor, and the power of the control of the wife by the husband was carried to such an extent as to vest in him the right to use such forcible means as would bridle her tongue or make her of good behavior. The rule is a harsh one at best, and, with the progress of civilization and the changes of a wise modern legislation, of the relations between husband and wife as to the right of property and personal control by the husband, it would seem absurd, in this enlightened age, to regard the wife as a mere machine, made to labor and to talk as the husband directs, and to make him liable on that ground for her torts, when not committed by his direction or procurement." Lane v. Bryant, 1896, 100 Ky. 138, 37 S.W. 584, 585, 36 L.R.A. 709.

█ One having contractual dealings with a married woman is advised that the community property is not liable for her contracts; but against her tortious acts he cannot protect himself.

The legislature should provide that the community property is liable for damages resulting from the torts of either the husband or wife, or both.

We conclude that plaintiff's judgment lien is effective as against the defendant's moiety of the community real property and

that he is entitled to foreclose it in this proceeding.

The judgment of the district court is reversed and cause remanded with instructions to the district court to set aside its order of dismissal, and proceed with the disposition of this case not inconsistent herewith.

The Motion for a rehearing is overruled.

It is so ordered.

LUJAN, J., and HENRY G. COORS, District Judge, concur.

McGHEE and COMPTON, JJ., not participating.

SADLER, J. (dissenting).

Much of the somewhat lengthy opinion written by the Chief Justice for the majority to support soundness of the result reached represents an attempt to distinguish four California decisions, namely, Smedberg v. Bevilockway, 7 Cal.App.2d 578, 46 P.2d 820; Grace v. Carpenter, 42 Cal.App.2d 301, 108 P.2d 701; McClain v. Tufts, 83 Cal.App.2d 140, 187 P.2d 818, and Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641. In my opinion, the effort to distinguish these cases fails, each of them affording decisive authority for a result directly opposite that declared by the majority. The prevailing opinion concedes, as well it may, that much of our statutory law on the community property system is ap-

propriated bodily from earlier California statutes. This should make decisions of the appellate courts of that state highly persuasive, even though not involving the question of adopted construction of a statute, where ordinarily they would be decisive. Hence, the observations and holding of the California Court of Appeals in Smedberg v. Bevilockway, supra [7 Cal. App.2d 578, 46 P.2d 821], become highly pertinent on the precise question before us here. The Court said:

"But this plaintiff does claim that the wife's interest in the community property is liable for the wife's torts, and the plaintiff seeks to so charge that portion of the community property. In other words, the trustee seeks to force a division, whether operative now or in the future. The judgment above mentioned in favor of H. A. Brooks was rendered in an action maintained under section 171a of the Civil Code. It is as follows: 'For civil injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be liable therefor, except in cases where he would be jointly liable with her if the marriage did not exist.' That the liability under said judgment was not against both husband and wife nor was it against the husband is clear. We do not understand the plaintiffs to contend to the contrary. However, as above stated, the plaintiffs seek to hold the wife's interest in the community property in liquidation of

said judgment. Can it be so segregated and applied? At the instance of the wife her interest could be segregated by a mutual contract between her and her husband (Civ.Code, § 158); or in a divorce action (Civ.Code, § 146); or a separate action based on a divorce action, De Godey v. Godey, 39 Cal. 157; or, on her death, by reason of the provisions of her will. Probate Code, § 201. Our statutes provide no other methods. There are authorities to the effect that neither husband nor wife, except as we have recited, can force a division of the community property by partition, Freeman on Partition and Cotenancy, § 445, nor by a proceeding in equity. Martin v. Martin, Tex.Com.App., 17 S.W.2d 789."

"Now under the laws of California, except to her husband, a wife may not convey her interest in the community property. Peiser v. Griffin, 125 Cal. 9, 12, 57 P. 690; Tryon v. Sutton, 13 Cal. 490, 493; Landers v. Bolton, 26 Cal. 393, 420. As she may not dispose of her interest, the same is not subject to attachment. Howell v. Foster, 65 Cal. 169, 3 P. 647. Nor is it subject to sale under a writ of execution. Freeman on Execution, § 172b.

"Moreover, we have shown above under the laws of this state neither spouse can force a division of the community property except as a collateral issue in a divorce proceeding. That being so, the trustee in the bankruptcy proceedings of one of the spouses cannot do so, because such trustee has no better title or right in property than the bankrupt himself. In re Place, D.C., 224 F. 778."

Again in McClain v. Tufts, supra, the California Court of Appeals had this to say on the same question, to-wit [83 Cal. App.2d 140, 187 P.2d 819]:

"Appellant relies upon section 161a, Civil Code, which declares that the respective interests of the husband and wife in the community property are present, existing and equal, subject to the management and control of the husband as provided in sections 172 and 172a, Civil Code. The burden of her argument is that because community property is liable for the husband's torts, Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641, it is likewise liable for the torts of the wife.

"While the precise question has not been decided by a reviewing court the decisions do not support appellant's contention that the community property should be resorted to for the wife's torts because it is held liable for the torts of the husband. It was held in Smedberg v. Bevilockway, 7 Cal. App.2d 578, 46 P.2d 820, that the wife's interest in community real property could not be subjected to a lien under a judgment against her for tort, for which her husband was not also liable. The ground of the decision was that the respective interests of husband and wife in community property may

be segregated only in the instances and in the manner provided by statute, namely by agreement between husband and wife, by decree of divorce, or by a separate action based upon a decree of divorce. Page 581 of 7 Cal.App.2d, page 820 of 46 P.2d. Division of the community property may also result from either an unsuccessful divorce action or an action for separate maintenance. Civ.Code, §§ 136, 137, 141."

The Supreme Court of California in Grolemund v. Cafferata, supra, decided a few years after the decision in Smedberg v. Bevilockway cited the latter case approvingly on the question at issue. We thus have four decisions from the California appellate courts, one being by the Supreme Court itself, directly against the holding of the majority in the case at bar. The majority seek to escape this formidable array of authorities from the state whose statutes on community property furnish the reservoir from which so many of our own have been taken by establishing that in California the wife's interest in community property is not vested as in New Mexico.

The strength of the majority view, then, must rest largely on their ability to distinguish these cases. It is on this language by the Supreme Court of California in Grolemund v. Cafferata, supra, that they rest the distinction sought, to-wit:

"Though the court in the Smedberg case did not discuss the effect of section 161a, it reasonably can be inferred from that decision that the District Court of Appeal was of the opinion that section 161a of the Civil Code does not change the nature of the wife's interest to a vested one so as to give her creditors the right of sequestration by attachment, execution or any other legal proceeding. Otherwise, her half of the community property would have been subjected to a lien by the trustee in bankruptcy," etc.

The Section 161a of the California Civil Code, referred to in the foregoing quotation and adopted in 1927, declares the respective interests of husband and wife in community property during marriage to be "present, existing and equal". It is set out in full in the quotation from 22 Cal.Law Rev. 404, 417, to follow.

It has been my contention all along that to seize upon this language as concluding the question to be resolved is like lifting oneself by one's own boot straps. The question to which we seek an answer is whether in California the wife's interest in community property is a mere "expectancy," or is "vested" as in New Mexico. If the latter, then four decisions from the appellate courts of that state are directly opposed to the result declared by the majority in the case at bar. Yet because in the Grolemund case the Supreme Court interprets Smedberg v. Bevilockway supra, as seeing in section 161a of Cal.Civ.Code no

warrant for dissolving the community to satisfy a personal tort judgment against the wife alone, and as not changing the wife's interest to a vested one *in the sense that would permit it,* the present majority affirm that "sec. 161a [of Cal.Civ.Code (Statute of 1927)] did not change the wife's interest from a 'mere expectancy' to a vested right". As presently will be demonstrated, the majority opinion stands alone among decided cases, in the announced view that the 1927 statute, section 161a, Cal.Civ.Code, did not change the wife's interest from a "mere expectancy" to a "vested" one. Applying the majority interpretation of the language of the Supreme Court of California in Grolemund v. Cafferata, supra, to the interest of the spouses in an estate by the entireties, where such tenancies still exist, an analogy sensed and relied on in support of its conclusion in Smedberg v. Bevilockway, supra, decided by the District Court of Appeals in California, if in rejecting an effort to sequester the interest of the wife alone in certain real estate held by entireties to satisfy a personal judgment against her, 4 Thompson on Real Property 360, § 1824; Gorelick v. Shapero, 222 Mich. 381, 192 N.W. 540, some appellate court had said in almost the exact language of the court in the Grolemund case that her interest therein "was not vested so as to give her creditors the right of sequestration by attachment, execution or other legal proceeding"—it could with as much justifi-cation, yet contrary to the well recognized fact, be said the interest of the wife in such estate was not vested.

With as much logic, we might conclude that because in New Mexico the wife is denied all voice in the management and control of the community estate; or, because in New Mexico she lacks the power of testamentary disposition over her share of the community estate; or, because in New Mexico, upon her death, her share in the community "belongs" to the husband without administration, whereas, upon the husband's death his share either descends or passes by testamentary disposition—that by reason of those circumstances, her interest is not vested. We have said it is vested, Beals v. Ares, 25 N.M. 459, 185 P. 780, yet "vested", nevertheless, subject to the limitations on present enjoyment, control and disposition pointed out above. Are we to say that by reason thereof, her interest in the community is not vested? On the contrary, as just said, we have held directly opposite. Beals v. Ares, supra. Nor in California, simply because the wife's interest may not be siezed and sold to satisfy a personal tort judgment against her, is it to be concluded her interest in the community is not vested.

Legal essayists of the highest standing in California dispute the majority conclusion in the case at bar that the wife's interest in the community is not vested, by virtue of

section 161a, Cal.Civ.Code. In an article entitled "Interest of Wife in Community Property" by William M. Simmons of the Hastings College of Law in San Francisco, appearing in 22 Cal.Law Rev. 404, the author states:

"IV. Statutory Enactment of 1927

"In 1927 Civil Code section 161a was enacted, providing:

'The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property.'

"It has been suggested that this statutory change did not affect the theory of ownership in community property. However, it seems more probable that it was an attempt to comply with the doctrine of the supreme court as set forth in the Spreckels and Stewart cases and to state in plain language the legislative intent to change the theory of ownership in community property thereafter acquired and afford the wife a vested interest therein. It seems that this view is supported by the second sentence of the section, and also by the fact that the section was enacted within a year after the supreme court's decision in Stewart v. Stewart which again emphasized the need of 'plain' language to bring about such a result. Such a construction seems to have been adopted by the federal courts.

"If it be held that the effect of the enactment in 1927 of section 161a of the Civil Code is to create in the wife a vested interest in the community property acquired thereafter, interesting questions still remain as to the exact nature of that interest. Is the wife's interest to be treated as that of a joint tenant, a tenant in common, the interest of a co-partner or of a tenant by the entirety or is it none of these? It has already been pointed out that the Constitution of 1849 gave the legislature the power to define and limit the nature of the wife's interest in the marital property. This was not changed by the Constitution of 1879 which merely defined the separate property of the husband and wife. It still follows, therefore, that 'The estate of the wife in the community property is a creature of statute, and is, of course, just what the statute has made it.'

"In view of dissimilar statutory provisions prevailing in other states where the community property system is in effect the decisions of the courts of such states are of doubtful assistance. It has long been provided in Civil Code sections 161 and 682:

"'A husband and wife may hold property as joint tenants, tenants in common, or as community property.

" 'The ownership of property by several persons is either:

" '1. Of joint interests;

" '2. Of partnership interests;

" '3. Of interests in common;

" '4. Of community interest of husband and wife.'

"These sections had been repeatedly considered by the supreme court prior to the enactment of Civil Code section 161a, but, because of long established legal doctrine and of other statutory provisions, had been held inadequate to create in the wife a present vested interest in the community property. It would seem, however, that the provisions of section 161a expressly defining the interest of the husband and wife in community property should be construed in the light of these sections and that, as to community property acquired after 1927, the husband and wife hold not as joint tenants, tenants in common, nor in co-partnership but rather that each has a present title and ownership to an equal portion of such community property, the wife's interest being subject to such power of management and control in the husband as public policy expressed through appropriate statutory provisions may deem desirable. This view has already been advanced by at least one commentator."

In another article on "The Ownership of Community Property in California" by Dean M. R. Kirkwood of Stanford University School of Law, 7 So.Cal.Law Rev. (10–13), the author deals at some length with the interests of the wife in community property under section 161a Cal.Civ.Code, and among other things, says:

"Surely the use of the words 'present, existing and equal interests' shows a legislative intent to 'vest' an interest in the wife. Indeed the complaint of the court in the Spreckels case [Spreckels v. Spreckels, 172 Cal. 775, 158 P. 537], reiterated in the Stewart case [Stewart v. Stewart, 199 Cal. 318, 249 P. 197], was that the Legislature had not said 'in plain language' 'that the purpose of these amendments was to vest in the wife during the marriage a present interest.' The legislature, coming in 1927, at the first session of the Legislature following the first decision in the Stewart case, seems clearly designed to remedy the defect found by the court in earlier enactments. The use of the word 'present' was, in all probability, induced by its use in the two cases mentioned."

Dean Kirkwood then refers to some federal cases including United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714, and concludes:

"The Court having, in these cases, fixed as the test for separate returns the existence in the wife, as well as the husband, of a 'proprietary vested interest,' the decision in United States v. Malcolm, based on these cases, is a clear recognition of a

'proprietary vested interest' in her under the laws of California after 1927."

See, also, Gillis v. Welch, 9 Cir., 80 F. 2d 165; United States v. Goodyear, 9 Cir., 99 F.2d 523, and Horst v. Commissioner of Internal Revenue, 9 Cir., 150 F.2d 1. All are decisions of the United States Circuit Court of Appeals for the 9th Circuit and the latest one, Horst case, was decided several years after Grolemund v. Cafferata, supra. If the Supreme Court of California in the Grolemund case had held the wife's interest in community property is not vested since adoption of section 161a of Cal. Civ.Code, the holding would have been binding on the federal court in the Horst case. Gillis v. Welch, supra. It not only did not so hold but on the contrary, as had been held in the other two Circuit Court of Appeals cases cited, held that the wife's interest in community property is vested since adoption of the statute mentioned. The court said [150 F.2d 2]:

"The community character and incidents of community property are determined by the law in force at the date when the property was acquired. In California, *until the adoption of Section 161a of the Civil Code* in 1927, the wife had no vested interest. Stewart v. Stewart, 204 Cal. 546, 269 P. 439, 442; Gillis v. Welch, 9 Cir., 80 F.2d 165; United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285." (Emphasis mine.)

The majority seek to weaken the effect of the Law Review articles quoted by suggesting they were written before Grolemund v. Cafferata, supra, was decided. Indeed so, yet they were written subsequent to the enactment of section 161a of Cal. Civ.Code, in 1927, whose effect they affirm was to "vest" in the wife her interest in the community estate. Let it be agreed that the articles do precede the Grolemund case, then what of Horst v. Commissioner of Internal Revenue, supra, by the Circuit Court of Appeals of the 9th Circuit, decided after the Grolemund case? Also, what of decisions of the California Courts of Appeal for the 4th and 3rd Districts in Cooke v. Cooke, 65 Cal.App.2d 260, 150 P. 2d 514, and in Wissner v. Wissner, Cal. App., 201 P.2d 837, respectively, decided since the Grolemund case? The majority can offer no explanation of these cases consistent with a contention that the wife's interest in the community estate in California is not vested. Instead, after their appraisal of the decision in Grolemund v. Cafferata, they seem content to add:

"The California Supreme Court's construction of that state's statutes should be binding on the world, and we accept it as the law of California."

This declaration has my wholehearted support. But most of all, that construction should be binding on the *District Courts of Appeal of California* and the

*United States Circuit Court of Appeals for the 9th Circuit of which California is a part.* Gillis v. Welch, supra. Yet, in Horst v. Commissioner of Internal Revenue, supra, we find this federal court, some years after the decision in the Grolemund case, holding that section 161a of Cal.Civ. Code gives the wife a vested interest in community property as shown by the quotation from its opinion, supra.

Likewise, in Cooke v. Cooke, supra, more than three years after decision in the Grolemund case, the District Court of Appeals for the 4th District said [65 Cal.App. 2d 260, 150 P.2d 516]:

"The factual situation other than that already outlined seems to be this: The policy was obtained in 1930 after the effective date of section 161a of the Civil Code, and a considerable part of the premiums were paid from the community income *so the wife had a vested community interest in a portion of the policy which could not be taken from her without her consent.* Union Mutual Life Ins. Co. v. Broderick, 196 Cal. 497, 238 P. 1034; McEwen v. New York Life Ins. Co., 42 Cal. App. 133, 183 P. 373; Lo Presti v. Manning, 125 Cal.App. 442, 13 P.2d 1002. It should follow that plaintiff had a vested interest in that portion of the insurance purchased by community funds and that this interest was not 'obtained from or through the other during the marriage and in con-sideration or by reason thereof' but by purchase from community funds. Thus at least, as to the portion of the policy purchased with the earnings of the husband while the couple were residing in California, if not elsewhere, the Arkansas statute could not be effective *as that interest vested under the California statute and not through any gift from Stephen."* (Emphasis mine.)

Again, the Court of Appeal from still another District, the 3rd, in the very recent case of Wissner v. Wissner, supra [201 P.2d 838], made the same holding, its views being epitomized in the following paragraphs of the syllabi, reading:

"Under statute defining the respective interests and rights of husband and wife in community property, a wife has a vested interest in one-half the earnings of spouses. Civ.Code, § 161a.

"Under Fifth Amendment, Congress could not by statute deprive a wife of deceased veteran of her vested right to one-half of the proceeds of a national service life policy paid for out of community funds after the proceeds had come into the possession of a beneficiary other than the wife. 38 U.S.C.A. § 454a, Civ.Code § 161a; U. S.C.A.Const. Amend. 5."

It is not unfair to assume that the appellate courts of California, even though inferior to the Supreme Court of that state, and the Circuit Court of Appeals for the

9th Circuit of which California is a part, bound as all are by a decision of the question by the Supreme Court, are as well circumstanced, if not even better, as the courts of any sister state to speak on the character of the wife's interest in community property as being vested or not. Is it not passing strange, then, if the state of the law there be as the majority here interpret it from the Grolemund case, that not one of the three separate courts just quoted noticed the Grolemund case as so holding, while they themselves were interpreting the law otherwise? It so impresses me, as unquestionably it will others, when due weight is given this circumstance.

The extensive effort in the prevailing opinion to dissipate the effect of the California decisions, namely, the Smedberg, Grace, McClain and Grolemund cases, the latter by claiming for it a holding reasonable interpretation will not support, abundantly demonstrates the weight the majority accord them. Indeed, they frankly admit that "it is this difference in the construction of the statutes by the respective state courts that brings about the different result." This seems an admission that if their appraisal of the Grolemund holding be erroneous, then all the California decisions mentioned repudiate the correctness of the conclusion they announce; to say the least, an admission that the only cases in the books on the exact point all are against them.

An outstanding proof of the majority's error in appraising the Grolemund case is to be found in their failure or inability to define the character of the wife's interest in community property after the adoption of section 161a of Cal.Civ.Code in 1927, if not a vested one. Admittedly, it had been an "expectancy" until that time. The high point in the discussion of the subject finds expression in these excerpts from the prevailing opinion:

"The California Supreme Court *holds* that the Statute of 1927, Cal.Civ.Code, sec. 161a, did not change the wife's interest from a 'mere expectancy' to a vested right," citing the Grolemund case. (Emphasis mine.)

"The California Court *did not hold* in the Grolemund case that the interest of the wife remained a 'mere expectancy' after the Act of 1927." (Cal.Civ.Code, § 161a. Emphasis mine.)

This example of logistics, I am quite unable to follow. The 1927 act did not change the wife's interest from a "mere expectancy" into a "vested right," say the majority in one breath, citing the Grolemund case. In the next—the wife's interest does not remain a "mere expectancy" after the 1927 act—citing the Grolemund case. Then, pray tell us, what is the nature of the wife's interest after the 1927 act? The majority seem unable to catalogue it. They make no attempt at de-

finition. Seemingly, they would place it in a no man's land somewhere between an "expectancy" and a "vested" right, neither fish nor fowl, a nebulous interest floating around in space, so to speak, with nowhere to go.

Of course, this is a conception wholly foreign to a legal comprehension of rights and interests. They either exist, or they do not. They either are expectant or vested. Whenever the majority elevate the wife's interest in the community in California, or elsewhere, above the rank of a "mere expectancy," by that same token they graduate it to the rank and plane of a vested right. There is no middle ground. It was a maxim of the common law that title to real estate must always reside somewhere. So it is here, having admitted that the 1927 act lifted the wife's interest in the community above the grade of an "expectancy", the majority, whether so intending or not, have placed it right into the company of vested rights. 4 Cooley on Cons't. Lim., 8th Ed., 749; Pearsall v. Great Northern Ry. Co., 161 U.S. 646, 673, 16 S. Ct. 705, 40 L.Ed. 838.

They like to read the holding in the Grolemund case as saying the 1927 act "does not change the nature of the wife's interest to a vested one", period. It pleases me to add what follows immediately, viz., "so as to give her creditors the right of sequestration by attachment," etc. If the period be added where I have supplied it, the holding in the Grolemund case would be as the majority affirm. When what follows that point in the sentence is added, it no more supports the majority appraisal of the Grolemund case than if the same had been said of the wife's interest in an estate by the entireties.

Thus it is that the effort in the prevailing opinion to destroy the effect of the California decisions cited, supra, on the supposition that in California the wife's interest in the community is not vested, whereas in New Mexico it is, fails utterly. Unquestionably, the wife's interest in community property is no less a vested interest in California than it is in New Mexico. In addition to authorities already cited on nature of wife's interest in the community estate since adoption in 1927 of § 161a of Cal.Civ.Code, see Bank of America Nat. Trust & Savings Ass'n v. Rogan, D.C., 33 F.Supp. 183, and Penn Mutual Ins. Co. v. Fields, D.C., 81 F.Supp. 54.

Nor is the majority opinion to be supported by anything said or held in the recently decided case of Dillard v. New Mexico State Tax Commission, 53 N.M. 12, 201 P.2d 345. While not myself agreeing on the main issue presented in that case, it must now be accepted as the settled law in this state that the veteran's tax exemption is not to be satisfied from the common property as a whole but only from the

veteran's share therein. Hence, the other half interest (usually the wife's) is subject to separate assessment and sale for non-payment of the tax thereon. The mere fact that by constitutional mandate, as declared by the majority in the Dillard case, the community interest of the spouses in particular property may be torn asunder in executing the state's overweening power of taxation, certainly is no argument that the existing statutory means otherwise provided for dissolution of the community are to be enlarged by judicial decision to any greater extent than necessary to carry out the purposes intended in granting the veteran's exemption.

The great injustice visualized by suggesting that holding no part of the community property is liable for the wife's torts may permit one worth millions of dollars to escape without liability for grossly negligent or intentionally tortious acts sounds a false alarm. The husband in New Mexico is liable for his wife's torts committed after marriage not done by means of, or in the use of, or in the assertion of some right in reference to her separate property. Henley v. Wilson, 137 Cal. 273, 70 P. 21, 58 L.R.A. 941, 92 Am.St.Rep. 160. See, also, Van Maren v. Johnson, 15 Cal. 308; Grolemund v. Cafferata, 17 Cal. 2d 679, 111 P.2d 641; Taylor v. Murphy, 50 Tex. 291; Campbell v. Johnson, Tex. Com.App., 290 S.W. 526; Scott v. Brazile, Tex.Com.App., 292 S.W. 185, and Foster

v. Ingle, 147 Tenn. 217, 246 S.W. 530, 27 A.L.R. 1214. And any judgment recovered against him for a tort so committed is to be satisfied from the community as a whole—not from the wife's interest alone.

My views and those of the Chief Justice are widely variant upon the question as to where the weight of authority lies in the matter of the husband's common law liability for torts of the wife committed subsequent to marriage. It is claimed, assertedly supported by citation of approximately a score of decisions, that the "Married Women's Acts" have repealed the common law liability of the husband for torts of the wife. In my humble opinion the weight of authority is the other way. The great weight of authority does agree that the common law liability of a husband for voluntary torts of the wife is abrogated by the "Married Women's Acts" *so far as concerns torts committed in the management of her separate property,* which, in general, confer upon the wife the ownership and management of her own property, free from the control of her husband. But, in the greater number of states, the courts have held the married women's laws have not had the effect to relieve the husband from his common law liability for voluntary torts of the wife not connected with the handling of her separate property. Henley v. Wilson, supra; Taylor v. Murphy, supra; Foster v. Ingle, supra, and

Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, L.R.A.1915A, 491, Ann.Cas.1915D, 1197. Certain of the cases cited by the Chief Justice to support his view, among them Hageman v. Vanderdoes, supra; Foster v. Ingle, supra, and no doubt others, affirm this statement of where the weight of authority lies and make the distinction mentioned. As said by the author of the text on "Husband and Wife" on where the weight of authority lies on this question as late as 1944 (although the majority claim such statements appear only in the older cases) when 41 C.J.S., Husband and Wife, § 219, page 713, was published:

"A statute abrogating the husband's common-law liability for his wife's antenuptial torts will not by construction be extended to include exemption from liability for her postnuptial torts; *and by the weight of authority general property acts relating to married women do not change by implication the husband's common-law liability for such torts* or alter the wife's general liability therefor; but some authorities hold that by necessary implication such statutes do remove the husband's liability." (Emphasis mine.)

There is an annotation of the subject; "Liability of Husband for Independent Torts of Wife," appearing in 20 A.L.R. 528, with supplements in 27 A.L.R. 1218 and 59 A.L.R. 1468. The annotation in 20 A.L.R. 528 contains a listing of the states on this subject and says:

"In most jurisdictions, statutes have been passed which either expressly abrogate or limit, or by implication are held to abrogate or limit, the common law liability of the husband for the torts of his wife, committed by her without his participation."

It may easily be seen from the listing of the states that when the jurisdictions where the common law liability has been expressly abrogated or limited are subtracted from those holding it repealed by implication, the weight of authority lies exactly where the Supreme Court of California in Henley v. Wilson, supra, the Supreme Court of Tennessee in Foster v. Ingle, supra, and the Supreme Court of Arizona in Hageman v. Vanderdoes, supra, declare it to be on the precise question we are discussing.

The question of whether the husband is still liable for torts of the wife not connected with her separate estate can only be employed arguendo in this case and is not decisive. Nevertheless, it eliminates from consideration the supposed hardship often adverted to in the argument of allowing a person injured by the wife's tort to go remediless. As already indicated, if it be a voluntary tort, not connected with the management of her separate estate, the husband and the entire community estate may be made to respond. The common law liabil-

ity of the husband remains and is not to be deemed repealed by implication. See Ex parte De Vore, 18 N.M. 246, 136 P. 47, 51, where we said:

"It is well settled that where a statute does not specifically repeal or cover the whole ground occupied by the common law, it repeals it only when, and so far as, directly and irreconcilably opposed in terms."

The Chief Justice himself in the closing lines of the prevailing opinion reflects doubt on his personal view that the husband's common law liability for postnuptial torts of the wife is repealed by implication in this state in the obvious invitation to the legislature to clarify the matter of the liability of the spouses for torts by new statutory enactments.

Turning again to the very question at issue, in a former decision by this court, In re Chavez's Estate, 34 N.M. 258, 280 P. 241, 242, 69 A.L.R. 769, we noted the analogy between joint tenancy and our community estate (in some respects akin to estates by the entireties) especially as respects the right of survivorship in the husband upon death of the wife. We observed, however, that the community estate is sui generis, saying:

"Community property is, however, a concept foreign to the English common-law system, and with us is a creature of statute."

In Smedberg v. Bevilockway, supra, the California Court of Appeals in holding directly contrary to the majority here based its decision on dual considerations. First, that to permit the wife's interest to be seized and sold would approve a forced division of the community property in a way not authorized by statute. In the second place, the court fortified its refusal by citing an analogy between the community estate and an estate by the entirety. In an estate by the entirety held by husband and wife, the survivor takes the property owned jointly with the other free from a judgment against the decedent. Lunnen v. Hunter, 348 Pa. 402, 35 A.2d 292. And one of the tenants, acting alone, can not sever the estate. 4 Thompson on Real Estate, Perm.Ed., 332, § 1804.

It is clear that under the reasoning in Smedberg, Grace, McClain and Grolemund cases, all supra, from California, which the majority are unable to explain or distinguish, the wife's interest in community real estate may not be seized in satisfaction of a money judgment against her for a personal tort she committed in the management of her separate property. To hold otherwise would operate as an invasion of the husband's statutory powers of management and control, result in partition of community real estate as between husband and wife upon conditions unauthorized by law and thus bring about a premature dissolu-

tion of the community, either in part or wholly, against the will and over the objection of him who is its head. In addition, it would defeat a legislative purpose manifest in the statute declaring all the community property, upon death of the wife shall belong to the husband without administration. 1941 Comp. § 31-108.

The majority opinion heretofore filed on this appeal having been withdrawn, my former dissent filed at the same time is hereby withdrawn and the foregoing opinion substituted therefor. It follows from what is said therein that, in my opinion, the motion for rehearing should be granted and the judgment under review affirmed. The majority having concluded otherwise, I dissent.

DAVID W. CARMODY, District Judge, concurs.